[Crim. No. 983. In Bank.—March 2, 1904.]

THE PEOPLE, Respondent, v. GEORGE SUESSER, Appellant.

CRIMINAL LAW—MURDER—CONVICTION IN FIRST DEGREE—SUFFICIENCY OF INFORMATION.—An information for murder is sufficient if it substantially follows the language of section 187 of the Penal Code, which includes murder in both degrees. An information which charges that the defendant did "willfully, feloniously, and of his malice aforethought, kill and murder" a person named, though it omits the word "unlawfully," is substantially sufficient to sustain a conviction of murder in the first degree.

ID.—ARRAIGNMENT—DELIVERY OF COPY TO ATTORNEY—ABSENCE OF OBJECTION—BILL OF EXCEPTIONS—WAIVER OF IRREGULARITY.—It seems that upon arraignment of the defendant, the delivery of a copy of the information to his attorney is a sufficient delivery to the defendant, in the absence of objection of the defendant; and where the bill of exceptions shows that the defendant was duly arraigned, that fact is to be deemed established upon appeal. If there was any irregularity in delivering the copy to the attorney instead of to the defendant, it was waived by his finally entering a plea of not guilty, upon which he was tried, without objection at any time to such delivery in the lower court.

ID.—REMOVAL OF CRIMINAL ACTION—ERRONEOUS METHOD—JURISDICTION—ORDER OF REMOVAL.—Where upon the removal of a criminal action from one county to another, the method for the removal of civil causes was erroneously followed, in sending the original pleadings, papers, and files to the court to which the removal was made instead of sending certified copies thereof, as contemplated by section 1036 of the Penal Code, such error is not jurisdictional, but the court to which the action was removed acquired jurisdiction by the making and entry of the order of removal thereto, of which due proof was made by filing a certified copy thereof in such court.

ID.—ABSENCE OF OBJECTION TO IRREGULARITY.—The defendant was not prejudiced by the irregularity of method in transmitting the original papers, instead of certified copies thereof, where no objection was raised to any informality on that ground.

ID.—JURY TRIAL—DRAWN JURY—SPECIAL VENIRE—DISCRETION—APPEAL.—While it is more in accord with the spirit of the law to select a jury in a criminal case by drawing names from the jury-box, the court has power to order a special venire to be summoned by a qualified sheriff, and with the exercise of that power this court will not interfere where no gross abuse of discretion is apparent in the record.

ID.—DEFENSE OF INSANITY—EVIDENCE—OPINIONS—"INTIMATE ACQUAINTANCE"—DISCRETION.—Upon a defense of insanity, the deter-

mination of the question whether a witness is such an "intimate acquaintance" of the defendant as to be qualified to testify to his opinion of the sanity or insanity of the defendant is peculiarly within the discretion of the trial court, and its ruling will not be disturbed upon appeal, except where the evidence of intimate acquaintance is so lacking as to show unquestionably an improper exercise of discretion.

ID.—EVIDENCE—THREATS AGAINST OTHER PERSONS—CONNECTION WITH MURDER.—Threats of the defendant against other persons are admissible under circumstances showing a connection with the murder committed. Where the deceased was a sheriff who was shot because he sought to interfere with the threatened murder of other persons who had procured his arrest, threats as to these murders were admissible against the defendant.

ID.—INSTRUCTIONS—DISTINCTION AS TO DEGREES OF MURDER—INCONSISTENT INSTRUCTION FOR DEFENDANT.—Where the court gave approved instructions as to the distinction between the degrees of murder, the fact that a portion of another instruction given at defendant's request is inconsistent therewith, and states the rule more favorably to the defendant than it should have done, gives him no ground of complaint.

ID.—INSTRUCTION AS TO INSANITY—CARE AS TO EXAMINATION OF DEFENSE—CRITICISM.—An instruction as to the care with which the defense of insanity should be examined, though held not to be erroneous under former decisions of this court, would be better omitted, in view of the danger that the jury may take it as an intimation by the judge of his opinion of the case on trial.

ID.—PRESUMPTION OF SANITY—BURDEN OF PROOF AS TO INSANITY—EVIDENCE REQUIRED.—The defendant is presumed to be sane until the contrary appears, and the burden of proving the defense of insanity is upon the defendant, and to entitle him to a verdict on the ground of such defense the evidence must be such in amount that if a single issue of the sanity or insanity of the defendant were submitted to the jury in a civil case, the jury would find that he was insane.

ID.—KILLING WITHOUT MALICE IN ATTEMPT TO MURDER THIRD PERSON.—If the deceased was killed in the commission of a malicious and deliberate attempt to murder a third person, though without malice or ill-will against the deceased, the homicide is as much murder in the first degree as if the fatal blow had reached the person intended.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial. W. G. Lorigan, Judge.

The facts are stated in the opinion of the court.

Bertram A. Herrington, for Appellant.

U. S. Webb, Attorney-General, and C. N. Post, Assistant Attorney-General, for Respondent.

ANGELLOTTI, J.—The defendant was informed against in the superior court of Monterey County for the murder of Henry R. Farley. His motion for a change of place of trial having been denied, he was tried in Monterey County, convicted of murder in the first degree, and sentenced to death. This court held on an appeal that the motion for a change of place of trial should have been granted, and reversed the judgment, with direction to the superior court of Monterey County to grant said motion. (*People* v. *Suesser,* 132 Cal. 631.) In accordance with the mandate of this court, and by the consent of the parties, an order was thereupon made by the superior court of Monterey County transferring the cause to the superior court of Santa Clara County. A trial was then had in said last-named court, resulting in a verdict of guilty of murder in the first degree without recommendation, and the defendant was adjudged to suffer death. He appeals from the judgment and from an order denying his motion for a new trial.

1. It is urged that the information against defendant is fatally defective, in that the word "unlawfully" is omitted from the charging part thereof, which, so far as material, is as follows,—viz., "did then and there willfully, feloniously, and of his malice aforethought, kill and murder one Henry R. Farley, a human being, contrary to the form, force, and effect of the statute," etc.,—and further, that it is insufficient to sustain a verdict of murder in the first degree, in that it does not charge that the homicide was deliberate or premeditated.

Our statute (Pen. Code, sec. 187) defines murder to be "the unlawful killing of a human being, with malice aforethought," and murder so defined includes both degrees. It is sufficient to charge the crime of murder in the language of the statute defining it (*People* v. *Hyndman,* 99 Cal. 1), and this is substantially done by an information which charges a willful and felonious killing, with malice aforethought, contrary to the form, force, and effect of the statute. An information guilty of a similar omission of the word "unlawfully" was held sufficient in *People* v. *Davis,* 73 Cal. 355.

2. It is claimed that defendant was never arraigned under

the information, the basis of this contention being that the copy of the information required by statute to be delivered to him was not delivered to him personally, but to the attorney appointed by the court to defend him, who was present at the arraignment and acted for him therein. No objection was made by defendant to such delivery being made to his attorney. Defendant was, upon motion of his attorney, granted two days to plead. He subsequently, through such attorney, moved the court to set aside the information, and thereafter he entered a plea of not guilty thereto. So far as appears, the objection as to the delivery was never made in the lower court.

If there was any irregularity in delivering the copy to the attorney instead of to the defendant personally, which we do not admit, it was waived. (*People* v. *Lightner*, 49 Cal. 226.) It would seem, however, that a delivery of the copy of the information to the attorney representing the defendant, where no objection is made by the defendant, should be held to be a delivery to the defendant within the meaning of our statute. It may also be stated that the fact that defendant was "duly arraigned" is established by the bill of exceptions.

3. Our statute relative to the removal of criminal actions provides that the order of removal must be entered upon the minutes of the court, and that the clerk must thereupon transmit to the court to which the action is transferred a certified copy of the order of removal, record, pleadings, and proceedings in the action (Pen. Code, sec. 1036), and contemplates the retention of the original papers in the court from which the transfer is made, for it provides that if it becomes necessary to have them in the court to which the transfer is made, an order must be made for their transmission by the court from which the action was transferred. (Pen. Code, sec. 1038.) Instead of following the procedure plainly pointed out by the statute, the method designed for the transfer of civil causes was pursued. (Code Civ. Proc., sec. 399.) A certified copy of the order of removal was forwarded to the superior court of Santa Clara County and there filed, but, instead of certified copies of the other papers in the cause, all of the original pleadings, papers, and files were forwarded, and no certified copies thereof were retained in Monterey County.

It is further claimed that the transcript does not show that

the alleged copies of the minutes of the Monterey court showing the arraignment and plea were certified to be correct copies by the clerk, or that the information against defendant was ever filed in the superior court of Monterey County.

No suggestion as to any of these matters appears to have been made in the trial court, but the claim is made for the first time on this appeal that, by reason of these matters, the superior court of Santa Clara County never acquired jurisdiction to try the cause.

We are of the opinion that under the language of our statute the superior court of Santa Clara County acquired jurisdiction of the cause by reason of the making and entry of the order of removal. The statute provides that an order must be made "transferring the action," and when such an order is legally made the court making it has no jurisdiction to proceed further in the cause, so long at least as that order remains unrevoked. The certified copies to be forwarded to the court to which the action has been transferred are but evidence of the order of transfer and of the proceedings in the court from which the transfer has been made. There is nothing in the statute which makes the furnishing of such evidence essential to the "jurisdiction" of the court to which the transfer is made. Just as in the matter of service of a summons or a notice of appeal, it is the fact of service rather than proof thereof that gives jurisdiction, so here it is the fact of the making of the order rather than the proof thereof that transfers jurisdiction.

Due proof of the making of the order of transfer would doubtless be required by the court to which a transfer is made, and also by this court on appeal, but that was fully furnished, as shown by the transcript, in the method prescribed by law, —viz., by the certified copy of the order transferring the action, filed in the Santa Clara County court.

A view contrary to the conclusion we have reached appears to have been taken by the appellate courts of two or three of our sister states. (*Hudley* v. *State,* 36 Ark. 237; *Fawcett* v. *State,* 71 Ind. 590; *Williamson* v. *State,* 64 Miss. 229.) In the Mississippi case, the objection was made before trial, and the rulings in Indiana were apparently due to the peculiar language of the statute. In the latter state, where the courts have gone to the utmost limit of strictness in favor of defendants,

it was held in *Burrell* v. *State,* 129 Ind. 294, that any mere in-
formality is waived by appearance and submission without
objection to jurisdiction.

Although the superior court of Santa Clara County had
jurisdiction of the cause by reason of the order of transfer,
the defendant was entitled to have the certified copies for-
warded as provided by the statute. If he had in any way
suggested the defect, or objected to any proceedings being had
until they were furnished, and the court had overruled his
objection, a different question would be presented.

The court actually had jurisdiction, and defendant made no
complaint as to the insufficiency of the records and papers
forwarded. We cannot see how any substantial right of the
defendant could have possibly been affected by what was at
most a mere informality.

What appears to be the minutes of the arraignment and
plea is in fact certified to be a "copy of minutes,"—rather
informally, it is true, but sufficiently, in the absence of ob-
jection,—and the bill of exceptions shows that the original
information forwarded had been filed in the superior court of
Monterey County on October 9, 1899, and that, having been
duly arraigned thereon, defendant on October, 13, 1899,
pleaded not guilty thereto.

4. The case having been set for trial on September 23,
1901, defendant on September 21, 1901, filed a written de-
mand for a drawn jury. The case came on for trial Septem-
ber 24, 1901, and defendant challenged the panel of jurors
then present, which, so far as appears, was a drawn jury.
The challenge was allowed and the jury excused. Defendant
then demanded that a jury be drawn from the jury-box of
the county, in which were the names of four hundred and
seventy talesmen, regularly selected by the supervisors.

The court denied the request for a drawn jury, and, there
being no regular jury in attendance, ordered a special venire
of sixty jurors for the trial of this cause to be summoned by
the sheriff. The special venire was returned and the trial
commenced on the same day, September 24, 1901, the jury
being selected from such panel so summoned by the sheriff.

No reason was assigned to the court for the request for a
drawn jury and no showing made, and it was not suggested
that the sheriff was in any degree disqualified.

It is, however, now contended that there was ample time for the procuring of a drawn jury, and that inasmuch as the deceased was sheriff of Monterey County it was an abuse of discretion to allow a "brother sheriff" to select the jury.

There is nothing in this contention. While this court has in several cases suggested that it is more in accord with the spirit of the law pertaining to the subject to select jurors by drawing names from the jury-box than to allow the sheriff to select the individuals who shall act, the trial court unquestionably has the power, under the provisions of section 226 of the Code of Civil Procedure, whenever a jury is needed, and jurors have not been drawn or summoned, to either order a sufficient number drawn and summoned, or direct the sheriff, if he is not disqualified, to summon so many good and lawful men as may be required to serve as jurors.

It has the same power under section 227 of the Code of Civil Procedure, when there are not competent jurors enough present to form a panel. With the exercise of that power by the trial court this court cannot interfere, unless, perhaps, the circumstances of the case are such as to show a gross abuse of discretion by the trial court. In *People* v. *Davis*, 47 Cal. 93, the entire jury was selected from a venire selected by the sheriff, and this court said that the objection of defendant to the method pursued was fully answered by section 226 of the Code of Civil Procedure. (See, also, *People* v. *Vincent*, 95 Cal. 425.) It has repeatedly been held that a jury may be completed in this manner, notwithstanding the presence of names in the jury-box of the county. (*People* v. *Sehorn*, 116 Cal. 503, 508; *People* v. *Durrant*, 116 Cal. 179, 195.) In *Bruner* v. *Superior Court*, 92 Cal. 239, cited by defendant, the question was as to the propriety of the appointment of an elisor to select jurors to complete a grand jury.

The record shows no abuse of discretion by the trial court in this regard.

5. It was claimed that defendant was insane at the time of the killing. Complaint is made that the trial court erroneously held certain witnesses not to be "intimate acquaintances" of defendant, and on that ground sustained objections to questions addressed to them calling for their opinions as to the mental sanity of defendant, and that it allowed certain witnesses for the prosecution who had not shown themselves

to be intimate acquaintances to give their opinions on this subject.

The determination of the question as to whether a witness is an ''intimate acquaintance,'' and therefore competent under subdivision 10 of section 1870 of the Code of Civil Procedure to give an opinion as to the mental sanity of another, is peculiarly within the discretion of the trial court. The statute does not prescribe any measure of proof in such a matter. In *People* v. *McCarthy,* 115 Cal. 255, 258, this court said: ''In the determination of this question, as in that of any other fact from oral evidence, he [the trial judge], of necessity, must be conceded to be the best judge of what the evidence shows, since he has before him many elements of fact which cannot be transmitted to paper, but which enable him to more correctly weigh the evidence, and exercise a wiser discrimination as to what it shows than one who reads but a naked statement of the evidence, without the presence of the witness. And so it has been held, and wisely, that the trial judge is to be accorded wide discretion and latitude in this respect; and his ruling will not be disturbed except where the evidence is so lacking as to leave no just room for question that the discretion has been improperly exercised.'' (See, also, *People* v. *Hubert,* 119 Cal. 216, 221.[1])

We have carefully examined the testimony of each of the witnesses relative to the rulings complained of, and find no warrant for holding that error was committed in regard thereto.

6. The killing of deceased occurred in the city of Salinas on the evening of September 18, 1889, about 10 o'clock, on a street adjoining the home of defendant.

There was evidence tending to show that as the deceased, who was sheriff of Monterey County, was proceeding along the street with two companions, the defendant came from his house into the street, carrying a shot-gun and declaring to some of his relatives, who were endeavoring to dissuade him, his intention ''to kill them . . . to kill the old s— of a b—.'' The deceased accosted him by name and told him to stop, and asked him if he knew him, and the defendant answered: ''Yes, I do, I will kill you too, stand back.'' The deceased advanced a few steps toward defendant, and while they were between

[1] 63 Am. St. Rep. 72, and note.

twenty and twenty-five paces apart, the defendant shot and killed the deceased. One witness testified that when deceased said, "George, do you know who I am?" the defendant answered: "I do, you s— of a b—," and immediately shot him. One of the companions of deceased at once ran over to where the deceased lay, whereupon the defendant ordered him to stand back or he would shoot him, pointed the gun at him, and endeavored to shoot him, but the cartridge failed to explode.

The theory of the prosecution was, that defendant had determined to kill one Delaney and one Allen, and had started from his home armed for that purpose, and when deceased endeavored to prevent him from proceeding on his mission, deliberately killed him to get rid of his interference.

The prosecution was allowed to show that Delaney had sworn out a warrant against the defendant a few days before, and that Allen, who was a constable, had arrested him thereon one or two days before; that on the afternoon of the day of the homicide Allen told defendant that he had another warrant for his arrest, which, it appeared on cross-examination, had also been sworn out by Delaney for threats against his life; that defendant was very bitter against both Delaney and Allen, and during the same evening went to Delaney's house, assaulted him, and threatened his life; that to several people during the evening he threatened that he would kill both Delaney and Allen; that he subsequently procured a rifle, and after telling two or three people that he was going to Delaney's house and settle it with him, and that if Allen continued to follow him he would shoot him also, did go there, and fire several shots into Delaney's room; that he was discovered in the vicinity of Delaney's house by Allen, who went there upon hearing the shots; that when Allen advanced upon him, he ran back in the direction of his own house, from which he again came almost immediately with the shot-gun, and encountered and shot the deceased. All of the occurrences of the evening were testified to as having taken place within about two hours, and, so far as defendant is concerned, appear to have been parts of one continuous transaction, having for its ultimate object the doing of violence to Delaney and Allen, and incidentally resulting in the killing of deceased.

We have no doubt as to the admissibility of this evidence. It is of course true that evidence as to difficulties with or threats against persons other than the deceased, or as to other offenses, is not admissible against a defendant unless there is a sufficient connection between the facts sought to be proved and the particular act under investigation.

Where the proffered evidence is relevant to the issue being tried, the mere fact that it shows threats against or quarrels with persons other than the deceased, or the commission of other offenses by the defendant, is no legal objection to its admission. This is recognized by all the authorities, including those cited by defendant, one of them stating that ''while threats against the deceased are admissible in evidence to show malice, threats against another person are only admissible under circumstances which show some connection with the injury inflicted on the deceased.'' (*People* v. *Bezy*, 67 Cal. 223.) The evidence here admitted comes fully within the views of this court as enunciated in *People* v. *Miller*, 121 Cal. 343. There, as here, there was no evidence of any prior ill-will on the part of the defendant against the deceased, and there, as here, the only possible motive for the killing was the fact that the deceased obtruded himself between the defendant and the object of his vengeance, and was endeavoring to prevent the accomplishment by defendant of his purpose to kill another. In that case evidence that Mrs. Ryan had two days before had the defendant arrested on a charge of disturbing the peace; that on the day of the homicide he went to the home of a mutual acquaintance and asked her on some pretext to send for Mrs. Ryan; that when Mrs. Ryan came and found defendant there she at once left; that defendant pursued her and began shooting at her; that she ran into a house occupied by deceased, crying for protection, and that thereupon deceased endeavored to prevent defendant entering the house, whereupon the killing occurred, was held admissible.

It was there said that if defendant had not intended to kill Mrs. Ryan it was not likely that he would suddenly have formed the purpose to kill deceased, and that the purpose or intention of defendant in the pursuit of Mrs. Ryan was therefore material and important evidence. The evidence admitted here related entirely to the defendant's state of mind toward certain persons who were the objects of his hostile mission

when he left his home with a shot-gun and encountered deceased, and to his intention in regard to such persons. It was material to the determination of the question as to the character of the act by which Farley, who interrupted him in his mission, was killed, and to this purpose it was carefully limited by the court in its instructions. (See, also, *People* v. *Craig,* 111 Cal. 460; *People* v. *McKay,* 122 Cal. 630.)

Something is said about the admission of certain testimony relative to defendant's setting fire to Delaney's straw-stack, but if it be conceded that the same was inadmissible, it was volunteered by the witness and was immediately stricken out by the court.

The fact that he had been arrested ''for larceny'' was elicited by defendant's attorney in the cross-examination of a witness, and no motion was made to strike it out.

7. Complaint is made as to the instructions defining the difference between murder in the first degree and murder in the second degree. The trial court very fully instructed upon this question, but in no place erroneously to defendant's prejudice. It is well settled that to constitute murder in the first degree it is not essential that there should be any *appreciable* space of time between the intent to kill and the act of killing,—i. e. any interval ''capable of being appreciated or duly estimated.'' The intent to kill must be formed deliberately and with premeditation, but when so formed there need be no *appreciable* space of time between the intent and the act. As the trial court told the jury, ''They may be as instantaneous as successive thoughts of the mind,'' and ''It is sufficient that the killing was done with reflection and conceived beforehand, although the deliberate purpose to kill and the act of killing follow each other as rapidly as an act can follow intent conceived by the mind.'' These instructions have been repeatedly approved by this court. If a portion of another instruction, apparently given at defendant's request, is inconsistent with the instructions already noted, and states the rule more favorably to defendant than it should have done, he has no ground of complaint.

8. The instruction as to the care with which the defense of insanity is to be examined is in all essentials the same as the

instruction approved in *People* v. *Pico,* 62 Cal. 50, and *People* v. *Larrabee,* 115 Cal. 158. That the giving of such an instruction will not, in view of the prior decisions of this court, be held error, was declared in *People* v. *McCarthy,* 115 Cal. 255, 264. It was there stated, however, that it would be better if such instruction were omitted altogether, and in that statement we concur. The danger therein lies in the fact that a jury may take such an instruction as an intimation by the judge of his opinion of the case on trial.

9. The court instructed the jury that a person is presumed to be sane until the contrary is shown by a preponderance of evidence; that the burden of proving insanity is upon the defendant; and that to entitle defendant to a verdict upon the issue of insanity, the evidence "must be such in amount that if a single issue of the sanity or insanity of the defendant should be submitted to you in a civil case, you would find that he was insane."

These instructions were strictly in accord with the settled law of this state. (*People* v. *Ward,* 105 Cal. 335, and cases cited; *People* v. *Barthleman,* 120 Cal. 11; *People* v. *Plyler,* 126 Cal. 379, 383.) Cases from other courts in whose jurisdiction a different rule exists cannot be considered as authority here.

10. The court instructed the jury as follows, viz.: "If you find from the evidence that the defendant deliberately and premeditatedly intended to willfully, unlawfully, and with malice aforethought kill and murder one Charley Allen, or any other human being, and that in making such unlawful attempt to take the life of Charley Allen, or any other person, the defendant intentionally killed Henry R. Farley, the defendant is, under such circumstances, just as guilty of the crime of murder and of the same grade of offense as if he had unlawfully, deliberately, and premeditatedly and with malice aforethought killed Charley Allen, or the person whom he intended to kill, instead of Henry R. Farley. Under such circumstances the crime is as complete as though the person against whom the intent to kill was directed had been in fact killed."

This instruction was called forth by the fact that there was some testimony tending to show that the defendant claimed that he mistook Farley for Allen, whom he intended to kill,

and fired the fatal shot under the belief that he was firing at Allen.

The defendant claims that to constitute murder in the first degree, there must exist in the mind of the person who slays another a specific intention to take the life of the person slain, and if he, with premeditated intention to slay one person, against his intention, slay another, it will not be murder in the first degree. He therefore claims that the court erred in giving the foregoing instruction, and in refusing his requested instruction 29, based on his theory of the law, which requested instruction was as follows, viz.: ''You are further instructed that the malice essential to constitute murder of the first degree must exist towards the person actually killed, and if it appears that the defendant entertained no malice or ill-will towards the deceased at the time of the killing, but that he did entertain malice and ill-will towards Charley Allen, and that he shot the deceased upon the erroneous belief that it was Allen, it would constitute murder of the second degree only.''

Decisions cited from Tennessee and Texas appear to sustain defendant's contention. (*Bratton* v. *State,* 10 Humph. 103; *Musick* v. *State,* 21 Tex. App. 69.) The overwhelming weight of authority is, however, the other way. It is said in the American and English Encyclopedia of Law (2d ed., vol. 21, p. 165): ''There is some conflict of authority as to whether or not the homicide can constitute murder in the first degree, where the intent was to kill a third person, but by some accident or inadvertence the deceased was killed, instead of the person intended. The better doctrine is that a homicide so committed is as much murder in the first degree as it would have been had the fatal blow reached the person for whom intended,''—citing the following cases, which uphold the rule stated to be the ''better doctrine,'' viz.: *State* v. *Raymond,* 11 Nev. 98; *State* v. *Murray,* 11 Or. 413, 415; *State* v. *Payton,* 90 Mo. 220; *Commonwealth* v. *Eisenhower,* 181 Pa. St. 470;[1] *State* v. *McGonigle,* 14 Wash. 594. In McClain on Criminal Law (vol. 1, sec. 323) it is said: ''In determining the criminality of the act of killing it will be immaterial whether the intent was to kill the person killed or whether the death of such person was the accidental or otherwise unintended result

---

[1] 59 Am. St. Rep. 670.

of the intent to kill some one else—the criminality of the act will be deemed the same.''

In Wharton on Criminal Law (vol. 1, sec. 120) it is said: ''A looking for B sees C whom he mistakes for B and whom he kills. This is murder because the intent to kill, however mistaken his reasoning, was really pointed at C.'' (See, also, 1 Wharton on Criminal Law, sec. 318; also Kerr on Law of Homicide, sec. 99; Bishop's New Criminal Law, sec. 328.)

In *State* v. *McGonigle,* 14 Wash. 594, the following instruction, ''I also instruct you, where a person purposely and of his deliberate and premeditated malice attempts to kill one person, but by mistake or inadvertence kills another instead, the law transfers the felonious intent from the object of his assault, and the homicide so committed is murder in the first degree,'' was held correct.

The exact question here presented does not appear to have ever been decided by this court (see, however, *People* v. *Craig,* 111 Cal. 470; *People* v. *Olsen,* 80 Cal. 126; *People* v. *Keefer,* 18 Cal. 636), but we are satisfied that, under our statute, the law is as stated in the instruction quoted above from *State* v. *McGonigle,* 14 Wash. 594. The court therefore did not err in refusing defendant's instruction on this subject. We see nothing in the contention that the instruction on this subject, given at the request of the people, invaded the province of the jury. No other objection that demands notice is made thereto, and, so far as we can see, it correctly stated the law upon the subject under discussion.

11. Defendant complains of the action of the court in modifying some requested instructions and in refusing others. We have already discussed the refusal of his requested 29th instruction. We have examined the others and find no error. Some were not pertinent, and the others did not correctly state the law, except in so far as they were given after modification, or fully covered by other portions of the charge.

It is earnestly urged that the evidence in this case was not such as to justify or sustain a verdict of guilty of murder in the first degree. We have thoroughly examined and considered the evidence set forth in the record, and can find no warrant therein for the setting aside of the verdict of the jurors

who tried the case, and the decision of the judge who denied the motion for a new trial.

The judgment and order are affirmed.

McFarland, J., Shaw, J., Van Dyke, J., and Henshaw, J., concurred.

Lorigan, J., having presided at the trial in the lower court, did not participate.