[Crim. No. 1693. In Bank.—February 15, 1912.]

THE PEOPLE, Respondent, v. ROSARIO SAINZ, Appellant.

CRIMINAL LAW—MURDER—EVIDENCE—ABSENCE OF PERSONAL ENMITY—
MALICE—BLOOD LUST.—In a prosecution for murder, the evidence,
although it shows no personal enmity or hostility on the part of
the defendant against the deceased, is held sufficient to show that
the defendant's blood lust had been aroused, and that he was will-
ing to slay, and did slay, the deceased without provocation. Such
evidence clearly indicates malice, and whether it be called express
or implied is immaterial.

ID.—VOLUNTARY INTOXICATION—ABSENCE OF CRIMINAL INTENT—QUES-
TION FOR JURY.—The voluntary intoxication of the defendant at the
time of such killing was no excuse for the crime, and the question
whether by reason thereof he was incapable of forming a specific
criminal intent was for the jury to pass upon under proper instruc-
tions.

ID.—PROOF OF MOTIVE NOT ESSENTIAL.—While evidence of motive is
always permissible and ofttimes valuable, it is never essential to the
proof of a crime.

ID.—DIRECT EVIDENCE OF KILLING BY SHOT FROM RIFLE—CONFLICTING
EXPERT EVIDENCE.—The positive testimony of an eye witness that
he saw the defendant actually fire the shots from his rifle, one of
which killed the deceased, is sufficient to sustain his conviction,
notwithstanding the testimony of experts that the cartridges the
shells of which were found at the place of the shooting could not
have been fired from such rifle because the indentations made in the
caps of the shells by the firing pin were different indentations from
those that would have been made by the firing pin of the rifle.
The jury might have concluded, there being no evidence to the
contrary, that the firing pin of the rifle had been tampered with
after the homicide.

ID.—EVIDENCE OF ESCAPE FROM JAIL—MISCONDUCT OF DISTRICT AT-
TORNEY—ERROR FAVORABLE TO DEFENDANT.—After the court had
excluded evidence offered by the prosecution to show that the de-
fendant after his arrest had escaped from jail and fled, an at-
tempt by the district attorney to show that the defendant did not
continuously remain in the custody of the sheriff after his arrest,
is not misconduct. The court erred in ruling out such evidence
but the error was in favor of the defendant.

ID.—INSTRUCTIONS—FLIGHT AS INDICATIVE OF GUILT—PROVINCE OF
JURY.—An instruction to the effect that the flight of the defendant
after the commission of the homicide, might be considered by the
jury as indicative of guilt, which omits the qualification that he
knew at the time of his flight that he was charged with the crime,

is an invasion of the province of the jury and should not have been given.

ID.—MURDER IN FIRST DEGREE—JURY TO FIX PUNISHMENT—ERRONE-OUS INSTRUCTION TO DISREGARD PENALTY.—Upon a conviction of the crime of murder in the first degree it is the exclusive province of the jury, and not at all of the court, to fix the punishment, and it is error for the court, in a prosecution for such offense, to instruct the jury, without qualification, that in arriving at their verdict they should not consider the penalty prescribed by law for the punishment of the offense. Such error is not cured by the fact that when the jury retired for deliberation they were furnished with five forms of verdict, one of which was for murder in the first degree and fixed the punishment at imprisonment for life, and the court then instructed them to use such form as complied with the verdict they arrived at.

APPEAL from a judgment of the Superior Court of Orange County and from an order refusing a new trial. Z. B. West, Judge.

The facts are stated in the opinion of the court.

Weisel & Dutton, for Appellant.

U. S. Webb, Attorney-General, and George Beebe, Deputy Attorney-General, for Respondent.

HENSHAW, J.—The defendant, an Indian or Mexican, was tried and convicted of the crime of murder, was found guilty of murder in the first degree and sentenced to be hanged. From the judgment and from the order denying his motion for a new trial he appeals.

1. His first contention is that the judgment is not supported by the evidence and is contrary to the evidence. This necessitates a brief statement of the circumstances of the homicide. Defendant was sheep-shearer and a member of Santos Carrissosa's sheep-shearing camp, which contained twenty or thirty Indians and Mexicans. The deceased, Jose Machado, was likewise a member of the camp. The camp was composed of two tents or encampments, one known as Carrissosa's tent, where Machado lived, the other known as Mirando's tent. The sheep-shearing was over. The defendant began to drink, became somewhat intoxicated, and fell into an ugly and quarrelsome mood. With his sheep-shears

he went to the entrance of Carrissosa's tent and challenged the occupants generally to come out and fight him. Thereafter he took his Winchester rifle and began shooting at a can upon the ground, firing six or eight shots, and declaring that "this is the way I am going to kill one or two tonight." He then, still carrying his rifle went into the Mirando tent, stumbled over some harness, fell down, got up and asked who had pushed him. Being told that nobody had, he said "I'll go out and kill two or three." He walked outside and began firing his rifle. He discharged three shots, the third striking Machado, who was standing at the entrance of Carrissosa's tent, a short distance away, killing him instantly. Thereupon defendant requested one of the men, Tiburcio Pollorena, to have Santos Carrissosa, the camp foreman or "boss," send him five dollars. He then fled from the camp and was arrested in Mexico several months later. Defendant's defense was that he had been drinking heavily in the afternoon, that he fell into a drunken slumber, did not remember anything that took place, and on awakening from his drunken slumber was told that he had better leave, and did so. He knew that he did not fire pistol cartridges from his rifle. The empty shells found on the ground at the place of the shooting were shells of 44-caliber pistol cartridges. Appellant's contentions against the sufficiency of the evidence resolve themselves into two propositions: 1. That he was drunk at the time of the shooting, that there is no proof of malice on his part toward or against Machado, that no enmity between them is shown to have existed and there was therefore no motive for the crime; 2. That he did not in fact fire the shot which killed Machado. The evidence leaves little doubt but that the defendant's ugly passions were aroused by the liquor which he voluntarily drank, that, as the Indians phrase it, "his heart was bad." There is no evidence of personal enmity or hostility on the part of defendant against the deceased, but there is evidence that his blood lust had been aroused and that he was willing to slay, and did slay, without provocation. This evidence clearly indicates malice. Whether it be called express or implied (Pen. Code, sec. 188) is immaterial. There is enough to justify the jury in finding that he stepped to the door of the tent with the deliberate intention unlawfully to take human life, and, upon the other

hand, there is enough to support the finding that there was no provocation at all, and that the circumstances attending the killing showed an abandoned and malignant heart. Of course, his voluntary intoxication was no excuse for his crime (Pen. Code, sec. 22), and the question whether by reason of that intoxication he was incapable of forming a specific criminal intent was one for the jury to pass upon under proper instruction, which the court gave, and they decided the question against him. There was no motive for the crime in the sense that it was shown to have been for revenge or the outgrowth of pre-existing hostility, but while evidence of motive is always permissible and ofttimes valuable, it is never essential to the proof of a crime. (*People* v. *Durrant,* 116 Cal. 179, [48 Pac. 75].) Yet, in another sense, motive sufficiently appears. The act was the expression of a mind inflamed by intoxicants, brutal, malignant, and on murder bent.

2. The evidence which appellant contends indisputably shows that he did not fire the fatal shot is the following: The rifle was a 44-caliber Winchester repeating rifle. From it could be discharged 44-caliber Colt pistol cartridges. The bullet which killed Machado was a bullet from such a cartridge. The shells near the door of Mirando's tent where the defendant stood when the shots were fired were shells of exploded pistol cartridges. Experts testified that these pistol cartridges were not fired from the rifle because the indentations made in the caps of the shells by the firing pin were different indentations from those that would have been made by the firing pin of the rifle. It is sufficient, as against this, to state that there was the positive testimony of one eye witness, Tiburcio Pollorena, that he saw the defendant actually fire the shots from his rifle. But, in addition, the jury was not bound to believe the testimony of the experts, and might have concluded, since no evidence was offered to the contrary, that the firing pin of the rifle had been tampered with after the homicide. Indeed, if such were the case, it would not be the first instance in which an attempt has been made to defeat justice in precisely this way. (*Taylor* v. *Commonwealth,* 90 Va. 109, [17 S. E. 812].)

3. The prosecution undertook to show that after his arrest the defendant escaped from jail and fled. The offer of evidence to this effect was excluded. The district attorney, after

one objection had been sustained, a second time asked the sheriff, who was on the witness stand, if the defendant continuously remained in his custody, and a second time the question was ruled to be improper. Misconduct is predicated upon this. But there was no such willful persistence in asking improper questions as to merit censure, much less reversal, since the ruling erred in favor of the defendant. (*People* v. *Schaeffer*, 161 Cal. 573, [119 Pac. 920].)

4. By questions directed to the defendant it was sought to be shown that he fled because he was told by a man (unknown and unnamed) that two other men with guns were in pursuit of him. The defendant was asked to give the conversation which he had with this unknown man, and an objection to this question was properly sustained. There was not disclosed to the court, as it could and should have been, the nature of the conversation sought to be elicited. On the other hand, under proper interrogatories and proper showing, the defendant would have the clear right to explain his flight. In this connection the court gave the usual instruction upon the subject of flight, such an instruction as has recently been considered by this court in *People* v. *Jones,* 160 Cal. 358, [117 Pac. 176]. It is unnecessary to repeat what is there said discountenancing the giving of such an instruction and the criticism upon the instruction given, because of an absence of the qualification that the defendant at the time of his flight knew he was charged with the crime. We would not feel impelled to reverse this case for this sole reason, but this admonition has been deemed proper in view of the reversal which must be ordered for the reason next to be considered.

5. At the very outset of his instructions, at the request of the district attorney, the court instructed the jury as follows:—

"It is the duty of the jury to decide whether the defendant be guilty or not guilty of the offense charged considering all the evidence submitted to you in the case. It is not for you to consider the penalty prescribed for the punishment of the offense at all. If you are aware of the penalty prescribed by law, it is your duty to disregard that knowledge. In other words, your sole duty is to decide whether the defendant is guilty or not guilty of the offense with which he is charged."

However appropriate such an instruction may be in crim-

inal cases other than murder, the giving of it in the case of murder is grave and manifest error. For in the crime of murder in the first degree, the crime with which this defendant is charged, it is the exclusive province of the jury, and not at all of the court, to fix the punishment. So true is this, that, so far from its being the duty of a jury to disregard its knowledge, if it is aware of the penalty prescribed, it is the duty of the court carefully to instruct the jury as to the solemn responsibility of fixing the punishment which the law has imposed upon it. (*People* v. *Olsen,* 80 Cal. 122, [22 Pac. 125] ; *People* v. *Leary,* 105 Cal. 486, [39 Pac. 24] ; *State* v. *Melvin,* 11 La. Ann. 535; *State* v. *Gilbreath,* 130 Mo. 500, [32 S. W. 1023].) Nor need time be spent in pointing out the gravity of such an error and the tremendous consequences which may follow to a defendant from it. Suffice it to say that it involves the difference between life and death. There is left but the one inquiry : was the error and injury of this instruction anywhere, in any way, averted or cured ? A review of all the instructions given compels an answer in the negative. Nowhere was the jury told what alternative punishments for murder in the first degree the law has prescribed, nowhere were they told that the decision as to which of the two punishments should be inflicted was a high duty imposed by law upon them. All that appears further in this connection is that the court stated to the jury before their retirement "The clerk has prepared five forms of verdict. You will use the one which will comply with whatever verdict you will arrive at." In connection with this language, there was handed to the jury five forms of verdict, the first of which was as follows: "We, the jury in the above entitled action, find the defendant guilty of murder in the first degree" ; the second, "We, the jury in the above entitled action, find the defendant guilty of murder in the first degree and shall suffer imprisonment in the state prison for life." But if it be conceded that these verdicts so delivered to the jury by the clerk form a part of the court's instructions, it would be impossible to say that they did or could operate to control the minds of the jury against the solemn admonition of the court that it was not for them to consider the penalty prescribed for the punishment of the offense at all. It could only result in the giving of instructions radically conflicting and involving not only the question of human liberty but of human life.

None of the rulings of the court upon the reception or rejection of evidence requires specific comment, but for the reasons given the judgment and order appealed from are reversed and the cause remanded.

Shaw, J., Angellotti, J., Lorigan, J., and Beatty, C. J., concurred.