[Crim. No. 4020.   Second Dist., Div. Two.   Sept. 6, 1946.]

THE PEOPLE, Respondent, v. SHERMAN WALKER, Appellant.

Leola Buck Kellogg and Montgomery G. Rice for Appellant.

Robert W. Kenny, Attorney General, and Alberta Gattone, Deputy Attorney General, for Respondent.

MOORE, P. J.—Having been convicted of murder by a jury appellant assigns as prejudicial errors (1) the insufficiency of the evidence and (2) misleading instructions. The arguments for a reversal revolve around the fact that the homicidal victim was an innocent bystander while the latter's brother had been the object of appellant's wrath in an immediately recent brawl.

About 9:30 o'clock in the evening of September 15, 1945, while Alfred Shaw and a boy were playing pool in a hall on the east side of Wilmington Boulevard near its intersection with 116th Street in the city of Los Angeles, appellant entered and promptly placed his hand over the pocket at which the boy was aiming. Addressing appellant, Alfred said, "Lean off the table, daddy, don't lean on the table." Thereafter, when Alfred inclined over the table to pay for the game, he was accosted by appellant who with a vile oath said, "Don't tell me not to lean on the table," and struck the young man on the nose. As the latter retreated around the room appellant pursued him saying, "Grey eyes, you have been messing with me a lot of times." At that moment Alfred's brother-in-law, Coy Collins, entered the pool hall, prevented appellant's further pursuit of Alfred and conducted him from the premises while urging him to desist from his undeclared purpose.

But as he was in the act of crossing the threshold appellant muttered: "I've got something to fix all you son-of-a-bitches." Spurning Collins' interference as they proceeded, he walked about 70 feet directly to his automobile in the entrance to an alley on the west side of the boulevard. Immediately on arrival he took his revolver therefrom. Sam Walker, perceiving the futility of Collins' admonitions, took his brother by the arm just before the latter fired the first ineffective shot. Following Sam's immediate release of him and Collins' hasty departure, appellant fired a second discharge into the body of Vernal Shaw, the brother of Alfred. Vernal had been conversing with two women in front of the pool hall prior to the moment appellant and Collins proceeded across the street. While appellant was searching for his gun Vernal followed the same course and stopped in front of the barber shop which adjoins the 20-foot alley in which appellant's car was parked. As he fired the second time, appellant stood near his automobile in the alley and approximately 15 feet from Vernal. A sketch attached to respondent's brief and reproduced herewith is a fairly accurate representation of the premises and of the positions of the parties.

115th Street

| | | 60 feet | | |
|---|---|---|---|---|
| N | Sidewalk | | Sidewalk | Cafe |
| W. . . . .E | | Wilmington Boulevard | | Pool Hall (40 ft.) |
| S | | | | |
| Cleaners and Barbershop | *2 | | | 5 & 10c Store |
| Alley          *1 | | | *3 | Empty Store |
| | | | | Abandoned Gas Station |

116th Street

*1 —Approximate location of defendant at time of shooting.
*2 —Approximate location of deceased.
*3 —Approximate location of Alfred Shaw.

While appellant walked to his automobile and searched for his revolver Alfred was retreating to a place of safety. He had heard appellant's threat as Collins pulled him through the door. As soon as he could retrieve his hat he emerged from the pool hall and directed his course southward on the east side of the boulevard. He had reached a point almost directly opposite the position of appellant when the first shot sounded. During the same time Vernal had walked from the pool hall to the point where he died.

From such facts it was a reasonable inference that appellant at the time of or before entering the pool room became enraged at Alfred Shaw. The vile epithet he uttered and the stroke by which he caused the boy's nose to bleed were evidence of his malice. His frustration in his attempts to continue the fight further angered him as he was held by Collins. His intent to take life or to do bodily harm was a reasonable inference from his threat that he had something with which to "fix" his prey, followed by his direct march to the place of concealment of his deadly weapon. Not only is there no evidence that he had abandoned the fight with Alfred but his entire behavior reasonably warrants the inference that his heart was filled with hatred and his mind was surcharged with an unquenchable resolution to destroy the object of his hate. The total time consumed from appellant's blow upon Alfred's nose until Vernal fell dead is indicated by the time required for Alfred to walk some 60 feet to escape danger. Appellant did not hesitate in the execution of his threat, but immediately upon conceiving and uttering his direful resolution he set forth to achieve it, rejecting friendly persuasions to desist. With his loaded revolver he would be avenged. Having hastily arrived at the place of its concealment he promptly opened fire.

In attempting to show the inadequacy of the evidence to support the verdict appellant argues that he was a nonbelligerent; that he walked out of the pool room as Collins talked; that there was no evidence that he was compelled to leave or that he entertained a malicious intent to injure anyone but that he was peaceably withdrawing from the scene of an abandoned conflict without reason for revenge. He forgets, however, that the jury as the triers of facts heard in detail the narrative above recited. From the acts of appellant, from his words addressed to Alfred and from the declaration of his purpose to "fix," followed by his immediately obtain-

ing, aiming and firing his gun, the jury were warranted in inferring that he was inspired by a long cherished grudge to be avenged.

No evidential basis appears for appellant's contention that he was wholly innocent of any intention to commit a crime. The suggestion that he fired his gun to induce Collins to cease annoying him or that he discharged it for any purpose other than to carry on the fight he had started in the pool hall is not a reasonable inference from the facts which the jury impliedly found. While the direction of his aim for the second shot was not directly toward the pool hall, there is no claim that he intended to shoot that institution. Resolved to maim or kill Alfred Shaw he aimed at the nearest person that might gratify his lust for revenge or at one he mistook for Alfred. Both the darkness and his own excitement were factors calculated to render his vision imperfect, but they made his intent no less zealous or his weapon no less deadly. While the evidence discloses no enmity between appellant and deceased it reveals that the former's "blood lust had been aroused" to the extent that he desired to take life without the slightest provocation. From the success of his venture it was a fair deduction that his act was a deliberate and malicious homicide. (*People* v. *Sainz*, 162 Cal. 242, 244 [121 P. 922].) If he aimed to shoot Alfred and by accident hit Vernal, or if he mistook Vernal for Alfred, in either event his murderous intent was by law transferred to the victim. (*People* v. *Pivaroff*, 138 Cal.App. 625, 628 [33 P.2d 44]; *People* v. *Suesser*, 142 Cal. 354, 367 [75 P. 1093].)

Appellant's plea that the discharge of the revolver, if aimed at a particular individual, was done in the heat of passion arising from a quarrel at the time and could therefore have resulted only in manslaughter is also without justification. When a person voluntarily and without cause provokes a quarrel and, without first attempting in good faith to withdraw from the conflict, kills his adversary, he is guilty of murder. (*People* v. *Montezuma*, 117 Cal.App. 125, 130 [3 P.2d 370, 4 P.2d 285].)

### Instructions Proper

Appellant assigns the following instruction as prejudicial: "A person is presumed to intend to do that which he voluntarily and wilfully does in fact do and must also be presumed to intend all of the natural, probable and usual con-

sequences of his own acts. Therefore, if you are satisfied to a moral certainty and beyond a reasonable doubt that the defendant did assail on the date mentioned one *Vernal Cecil Shaw* violently with a dangerous weapon likely to kill and which did in fact destroy the life of said *Vernal Cecil Shaw,* the natural presumption is that such assailant intended death or great bodily harm and in the absence of evidence to the contrary, this presumption must prevail.''

It is contended that such language has no application where the killing of a person by the discharge of a gun is admittedly fortuitous, and that appellant was prejudiced because there was no evidence of an assault on Vernal. Neither the facts proved nor the language of the instruction supports such contention. There is no admission that the discharge was fortuitous. The position of the prosecution was that appellant either aimed at Vernal, believing him to be Alfred, or that in attempting to shoot Alfred he accidentally shot Vernal. Since the proof was without contradiction that appellant ''assailed'' Vernal through inadvertence or by mistake and with a deadly weapon slew him, it would be contrary to reason to say that he did not intend all the natural and probable consequences of his act. The facts (1) that appellant provoked a quarrel with Alfred Shaw, (2) struck him without cause, (3) threatened to ''fix'' him, (4) straightway proceeded to get his loaded revolver, and (5) with it fired twice, hitting Vernal at close range, render unavoidable the inference that he purposed to commit a homicide, and that he was impelled by a felonious intent. That he did ''assail'' Vernal was not only fairly to be inferred but it was established beyond a reasonable doubt.

The second instruction criticized is that which directed the jury that where a person purposely and with deliberate malice attempts to kill one person but by mistake or inadvertence kills another the law transfers the felonious intent from the object of his assault and makes of the homicide a murder. By that instruction the law was correctly declared. (*People* v. *Suesser, supra; People* v. *Pivaroff, supra.*)

Judgment and order denying the motion for a new trial are affirmed.

McComb, J., and Wilson, J., concurred.