[Crim. No. 3775.  In Bank.—March 22, 1935.]

THE PEOPLE, Respondent, v. HARRY GARCIA, Appellant.

Thomas O'Hara and W. L. Shaw for Appellant.

U. S. Webb, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Respondent.

WASTE, C. J.—On October 7, 1933, the defendant, while an inmate of Folsom prison, stabbed and killed two fellow prisoners. The district attorney of Sacramento County filed an information containing two counts, each charging defendant with murder. He was tried and convicted as charged. In the absence of a recommendation in either verdict of the jury, the court, as required by law, entered judgment imposing the death penalty for each offense. This appeal is from the judgment and order denying a new trial.

There is no merit in the defendant's contention that the evidence is insufficient to support either verdict. The record discloses that for some time prior to the two homicides, which occurred within a few minutes of each other, there had been ill will between the defendant and each of his victims. Upon occasions prior to the homicides, this ill will flared into physical combat, with the result that the combatants either suffered bruises or stab wounds. Much conflict exists in the evidence as to the cause of these prior en-

counters and as to which person was the aggressor. We mention the preexisting "bad blood" between the defendant and his respective victims as offering some explanation for the homicides of which defendant now stands convicted. The same sharp conflict in the evidence as to the prior encounters exists with respect to the circumstances of the homicides. In support of its theory that the killings were deliberate, premeditated and unprovoked, the prosecution offered the testimony of three inmates of the prison, each of whom testified in substance that at approximately 11:30, or shortly thereafter, on the morning of the homicides the deceased Juan Garcia was walking across the prison yard alone; that the defendant approached him, took him by the arm, whirled him around and plunged a long-bladed knife into his chest. These witnesses also testified that the decedent was unarmed and did not make an assault upon defendant at the time.

The prosecution thereupon produced five other inmates of the prison who testified that at about 12 o'clock on the same day the defendant approached the deceased Stanley C. Price who, at the time, was sitting on a bench in the prison yard; that the defendant uttered an ugly epithet and plunged a long-bladed knife into the chest of Price before he had a chance to rise from his sitting position; that the defendant withdrew the knife from the body of Price, wiped it off and walked away; that Price was unarmed at the time of the stabbing and was engaged in eating a sandwich, both of his hands being occupied.

The prison physician testified that each deceased died as a result of stab wounds.

A confession made by the defendant two days after the homicide in the presence of the district attorney, the warden and other prison officials was put in evidence through the testimony of the person who had reported the same. In this statement the defendant, after narrating the prior troubles he had experienced with each of his victims went on to relate that he had stabbed Garcia as he was walking across the prison yard and Price as he was sitting on a bench, adding that he was "in fear that they were going to kill me". He disclaimed in his confession any intention to kill either man, stating that he merely desired by the stab-

bings to cause his victims "to get that out of their heads that they meant to kill me".

In his defense the defendant called as witnesses more than fifteen inmates of the prison whose testimony, collectively, related the circumstances of the earlier combats between defendant and his victims in a light more favorable to defendant than that disclosed by the prosecution's evidence, and described the happenings of the day of the homicides in a way that tended to indicate that each of defendant's victims had commenced the fatal frays by respectively attacking defendant with a knife, the latter retaliating in each instance as a matter of self-defense. The defendant took the stand in his own behalf and related in detail the several encounters he had with his victims, stressing that on the day of the homicides he was assaulted by them when each possessed a knife and that he stabbed each of them in self-defense. He also testified that his confession was involuntary and was extracted from him by means of intimidation and physical force exerted upon him by certain prison officials.

The prosecution thereupon produced evidence tending to rebut much of the defense testimony. Witnesses were called who testified to the free and voluntary character of the defendant's confession, to the fact that defendant was the aggressor in each instance on the day of the homicides and in his earlier encounters with each deceased, and to the fact that several of the defense witnesses, when interrogated by prison officials shortly after the homicides, disclaimed having any knowledge of the immediate events surrounding the perpetration of the homicides.

In view of this sharp conflict in the evidence we cannot, under well-settled principles, interfere with the jury's implied finding that each homicide constituted an unprovoked and premeditated killing which under the law, as expounded in the trial court's instructions, amounted to murder in the first degree, warranting the imposition of the death penalty.

In so concluding we are mindful that defendant in the confession introduced in evidence by the prosecution stated that he did not intend to kill either victim of his murderous assaults. Intent may be inferred from the circumstances of the unlawful act (*People* v. *Bennett,* 161 Cal. 214, 218 [118 Pac. 710]). The law conclusively presumes a malicious and guilty intent from the deliberate commission

of an unlawful act for the purpose of injuring another (*People* v. *Zari*, 54 Cal. App. 133, 136 [201 Pac. 345]). The prosecution is not bound by the exculpatory statements or self-serving declarations in a confession when shown by direct or circumstantial evidence to be untrue (*State* v. *Williams*, 142 Wash. 673 [253 Pac. 1074]; *State* v. *Richardson*, (Iowa) 240 N. W. 695, 700). In the present case, the prosecution produced evidence of eye-witnesses to the homicides, as well as other and inconsistent statements of the defendant, tending to establish that the homicides were without provocation and committed under circumstances showing an abandoned and malignant heart. ■ Moreover, confessions stand upon the same footing as other evidence and are to be weighed by the jury in the same manner. All parts are not necessarily entitled to the same credit, and the jury may believe a part and reject the remainder of a confession (*People* v. *Wyman*, 15 Cal. 70, 74; 8 Cal. Jur. 119, sec. 207).

■ Defendant makes the contention that it was error for the court below to deny his motion to vacate count one of the information charging the unlawful and felonious killing of Juan Garcia. In support of his motion the defendant urged that he was not legally committed on this count, inasmuch as the transcript of the proceedings had at the preliminary hearing fails to disclose that the witness called to establish the Garcia killing had assented to the oath required of witnesses. We cannot agree with the defendant's contention. The record of these proceedings discloses: "(Mr. Elmer Burrell, Folsom State Prison Convict, was then called *and sworn* as a witness on behalf of the People herein). Magistrate: . . . Raise your right hand. You solemnly swear your testimony in this case will be the truth, the whole truth and nothing but the truth, so help you God? Take a seat.

"Testimony of Elmer Burrell, witness produced on behalf of the People herein, who, *after being first duly sworn* by the Magistrate, as above stated, testifies as follows, to-wit: . . . " In view of the positive declaration in the record of the proceedings had at the preliminary hearing that the witness was "duly sworn", the trial court in denying the motion properly declared that "the court will presume there was an assent, and that the Magistrate performed his duty

. . . in administering the oath, and the assent of the witness". The record does not contradict the statement therein that the witness was "duly sworn", it is merely silent as to the character of the assent.

■ It was stipulated by respective counsel that the court below might hear a motion for separate trials in the absence of the defendant. This was done and the motion was denied. The hearing of this motion in defendant's absence is now urged as reversible error. In his opening brief the defendant declares that the cases do not state a definite rule as to the matters that may be considered in the absence of a defendant and concludes that "apparently if the matter relates to a mere matter of law, when no matters affecting guilt or innocence of the defendant are presented, it may be heard in the absence of the defendant". In *Mooney* v. *Superior Court,* 130 Cal. App. 521 [20 Pac. (2d) 106], it is declared: "It is a general rule that a defendant in a felony case should be present when he is arraigned and at every subsequent stage of the trial. . . . His presence, however, is not necessary at proceedings which are merely preliminary or formal, and no matters affecting his guilt or innocence are presented." The hearing and disposition of a motion for separate trials are preliminary and formal matters not affecting the guilt or innocence of a defendant. His presence is not, therefore, indispensable.

■ It is next urged that it was error for the court below to deny the motion for separate trials. Section 954 of the Penal Code provides that "An indictment, information, or complaint may charge . . . two or more different offenses of the same class of crimes or offenses, under separate counts. . . . The prosecution is not required to elect between the different offenses or counts set forth in the indictment or information . . . ; provided that the court in the interest of justice and for good cause shown, may, in its discretion, order that the different offenses or counts set forth in the indictment or information be tried separately. . . . " This section furnishes ample authority for the joint trial of the offenses of which defendant stands convicted. They were offenses of the "same class", as therein required, and were committed by defendant on the same day, within a short distance and interval of each other, and apparently with the same deadly weapon. Moreover, the evidence when con-

sidered in its entirety suggests that the two homicides were the culmination of a plan on defendant's part to "get" his two victims before they "got" him. In upholding an order refusing separate trials, this court declared in *People* v. *Kelly,* 203 Cal. 128, 135 [263 Pac. 226], that "The indictment showed that the three murders were committed by the same person, on the same day, and in the same city and county. These facts alone justified the court in forbearing, at the inception of the trial, to compel an election by the prosecution. When the evidence was concluded, the wisdom of the court's ruling was manifest." This reasoning is here applicable. We perceive no abuse of discretion in the trial court's ruling in the instant case.

We find nothing prejudicial in the lower court's ruling precluding the defendant from showing the character of treatment for epilepsy being administered by the prison physician to the deceased Garcia. The physician did testify, in answer to questions by the defense, that the victim had been under his care for epilepsy. While the rejected evidence having to do with the administering of sedatives and bromides to the patient might tend to establish that he was, in fact, irritable and even dangerous, as urged by defendant, it would not necessarily prove his reputation for peace and quiet. The court below correctly indicated to the defendant that he might show, by proper evidence, the reputation of the deceased for peace and quiet in order, of course, to assist the jury in determining whether the homicides were, as urged, committed in necessary self-defense. The proffered evidence went far afield, was immaterial and properly rejected. (*People* v. *Anderson,* 39 Cal. 703.)

There was no error in rejecting that portion of the warden's testimony having to do with the prison record or conduct of the deceased Garcia. While the warden expressed some difficulty in distinguishing between the victim's prison conduct and his reputation for peace and quiet, he stated that he was unfamiliar with the latter. The warden, as shown by his testimony, was merely familiar with the deceased's prison conduct as disclosed by the prison record. Obviously a person's prison record or conduct may be bad by reason of various infractions of the rules not having any connection with matters tending to establish his reputation for peace and quiet.

■ It is urged that the trial court erred in refusing defendant the right to be confronted with the witnesses against him. During the early part of the trial, it appears, the desk of the clerk of the court was between defendant and the witness chair and apparently in some manner obstructed defendant's full view of the witnesses. His request that the matter be adjusted and the courtroom furniture transposed was refused. No prejudice resulted to the defendant. He was at all times in the courtroom wherein the witnesses testified and no complaint was or is made that he was unable to hear any portion of the evidence adduced. After some of the witnesses had been called, the district attorney adjusted the matter by exchanging seats with the defendant. The cases relied on by defendant under the assignment have to do with the improper introduction of transcripts of prior testimony of alleged absent witnesses. The cases are not in point.

■ During the course of the trial defendant asked for a continuance until the following morning on the ground that a certain witness subpoenaed by the defense was not present in court. The court, upon inquiry, ascertained that the defendant had other witnesses available and ready to testify and directed that the trial proceed. The proper conduct of the trial was a matter resting in the sound discretion of the court below. We find no abuse therein. The contention is utterly lacking in merit.

■ Defendant urges that the trial court erred in admitting certain rebuttal evidence. He makes four such assignments. We do not propose to discuss them separately but will dispose of the same by stating that an examination of the entire record discloses that the evidence objected to under this assignment tended in each and every instance to directly rebut and disprove some portion of the defendant's case. The rulings are free of error.

Under his next contention the defendant specifies thirty-six instances of alleged error on the part of the trial court in admitting and rejecting other evidence. We have examined these assignments in detail and conclude, with a thorough knowledge of the entire record, that nothing even approximating prejudicial error in the trial court's rulings has been discovered or called to our attention.

■ The giving and refusing of certain instructions are next complained of. Objection is first made to a portion of one of the instructions given at the request of the prosecution, to the effect that "there need be, however, no appreciable space of time between the intention to kill and the act of killing—they may be as instantaneous as successive thoughts of the mind". As to the propriety of this portion of the instruction we entertain no doubt. (*People* v. *Bennett, supra,* 218; *People* v. *Hunt,* 59 Cal. 430, 435.)

■ The following instruction was given by the court: "In criminal cases, the proof of the moving cause is permissible, and oftentimes valuable, but it is never essential. Where the perpetration of a crime has been brought home to a defendant, the motive for its commission becomes unimportant. Evidence of motive is sometimes of assistance in removing doubt and completing proof which might otherwise be unsatisfactory, and that motive may be shown by positive evidence or gleaned from the facts and surroundings of the act; then proof of the motive becomes a circumstance, but nothing more than a circumstance, to be considered by the jury, and its absence is equally a circumstance in favor of the accused, to be given such weight as the jury deems proper. But proof of motive is never indispensable." This instruction was taken almost *verbatim* from *People* v. *Durant,* 116 Cal. 179, 208 [48 Pac. 75]. It does not, as urged, constitute a charge on the weight of the evidence or on the facts of the case in violation of article VI, section 19, of the Constitution. This argument was refuted in *People* v. *Wilson,* 26 Cal. App. 336, 338, 339 [146 Pac. 1048], wherein, in discussing a similar instruction and an identical objection thereto, it is declared: "We think that the instruction is not subject to such objection. It did not in any manner indicate to the jury any opinion of the judge as to whether a motive for the alleged crime had or had not been shown, but it did fairly define the purposes for which evidence having reference to a possible motive had been received and should be considered."

We find no error in the court's refusal to give a further instruction on motive tendered by the defendant. The subject was sufficiently covered in the foregoing instruction which, when read with the court's entire charge to the jury, fully safeguarded defendant's rights.

Two other instructions requested by defendant and refused by the court need not here be set forth. They were not essential to clarify given instructions and the subjects treated therein were sufficiently and correctly covered in other portions of the court's charge. The jury was fully and fairly instructed on all phases of the law pertinent to the cause pending before it.

Complaint is made that the district attorney in four instances was guilty of prejudicial misconduct in his cross-examination of certain defense witnesses. In two of these instances the trial court properly overruled defendant's objections to the questions propounded by the district attorney. The matters sought to be elicited were clearly within the confines of proper cross-examination. As to the remaining two instances, the court sustained defendant's objections to the questions put to the witnesses and in one case admonished the jury, as requested by defendant, to disregard the remarks of the district attorney. It is not essential that the court so admonish the jury every time it sustains an objection to a question. However, in its charge to the jury the court adequately covered the situation when it declared that "if any matters have been referred to or stated during the trial of the case by counsel, which facts or matters were stricken out by the court . . . all such rumors, matters and facts should be entirely disregarded". The jury was also instructed to "disregard and discard from your minds every impression or idea suggested by questions asked by counsel . . . to which objections were sustained" and to try the defendant "only on the evidence which is before you". No miscarriage of justice appears to have resulted from the conduct here complained of.

Nor do we find any abuse of discretion in the trial court's denial of the defendant's motion for new trial. The motion was grounded on alleged newly discovered evidence and was supported by an affidavit of one of the inmates of the prison to the effect that the affiant saw the deceased Garcia discard a knife immediately after the fatal stabbing; that the affiant retrieved the knife and concealed it upon his person until the prison officials took it from him; and "that he has feared to inform the defense . . . of his knowledge of the affray aforesaid for fear of the consequences to himself on the part of the prison authorities . . . " It was

established by the district attorney that the affiant had been subpoenaed by the defendant and had been present in court during the course of the trial but had not been called as a witness. In view of this the court below declared that since the defendant "had the witness here and had the opportunity to discuss it with him, the court is bound to come to the conclusion you did not exercise the diligence that you should have exercised". In addition, it should again be pointed out that several defense witnesses testified that the deceased Garcia possessed and wielded a knife at the time of the homicide which he discarded immediately thereafter. The alleged newly discovered evidence was, therefore, largely cumulative.

The judgment and order denying a new trial are, and each is, affirmed.

Seawell, J., Shenk, J., Curtis, J., Langdon, J., Preston, J., and Thompson, J., concurred.

Rehearing denied.