[Crim. No. 10699. In Bank. Mar. 13, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
EARL CLARENCE SEARS, Defendant and Appellant.

## COUNSEL

Edward D. Nino, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, John T. Murphy and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PETERS, J.**—In 1963 a jury found defendant guilty of the first degree murder of his stepdaughter Elizabeth Olives, the attempted murder of his wife Clara Sears, and the attempted murder of his mother-in-law Frances Montijo. The penalty for the murder was fixed as death. On appeal this judgment was reversed, largely because of the erroneous admission of a confession. (*People* v. *Sears,* 62 Cal.2d 737 [44 Cal.Rptr. 330, 401 P.2d 938].) A second trial started on September 28, 1966, but this ended with a mistrial on October 11 because the prosecutor asked defendant a palpably improper question. Defendant's third trial commenced on October 18, 1966. The jury returned the same verdict as the jury in the first trial, and again fixed death as the penalty for the murder. This appeal is automatic. (Pen. Code, § 1239, subd. (b).)

Defendant married Clara Sears in 1960. The spouses agreed that Clara and her three children by a former marriage would continue living in a cottage which she and the children had occupied before the marriage, while defendant would sleep in a nearby garage until he completed an addition to the cottage. Defendant never completed the addition, and Clara refused

to let defendant sleep in the cottage even after one of her daughters married and moved out. Defendant had his meals and watched television in the cottage.

Around the end of April 1963 defendant moved to a hotel. On Sunday, May 12, defendant visited his wife. According to her testimony, defendant threatened that he would kill her and the children if she got a divorce.

On May 16, 1963, defendant completed his work for the day and went to a neighborhood tavern where he drank beer with friends until about 7:30 p.m. Defendant then returned to his hotel and went to dinner with one Robert Kjaerbye. At 10 p.m. the two went to a tavern where defendant was a regular customer. After each man had drunk a beer, they drove approximately one block to the cottage occupied by Mrs. Sears.

Defendant and Kjaerbye entered the cottage through the unlocked front door. While Kjaerbye stayed in the living room, defendant went into the bedroom. Elizabeth was asleep and Clara was reading. Defendant told Clara that he wanted to talk with her, and she put on a robe and accompanied defendant to the kitchen. Because the floor was cold, Clara returned to the bedroom to get a pair of slippers. As she reentered the kitchen, defendant grabbed her robe and said, "If you won't want to come back to me. . . ." Then defendant unbuttoned his shirt and drew out an iron bar that he had stuck in his pants before entering the cottage. He struck Clara about the head until she lost consciousness. Elizabeth awakened and approached the kitchen. As she cried out for defendant to leave her mother alone, defendant turned on her with the iron bar. Clara regained consciousness and unsuccessfully tried to place herself between defendant and Elizabeth, but she again became unconscious.

Clara's mother, Frances Montijo, who lived next door with Clara's brother Patrick Montijo, heard the noise from her daughter's home and decided to investigate. As she approached the cottage Kjaerbye was leaving. He told her that he knew nothing of what was happening inside. Frances entered to find defendant on top of the screaming child. When defendant saw Frances, he attacked her with a knife he had taken from Clara's kitchen. After cutting her face, defendant threw Frances into a chair, rolled the iron bar against her throat and chest, and stabbed her with a barbecue fork, also taken from the kitchen.

Patrick's wife, Dolores, became concerned when Frances did not return from Clara's, and decided to investigate. As she arrived at the cottage, the injured Frances was making her escape. Dolores took Frances to a neighbor's house and went back to her own house for Patrick.

Patrick went over to the cottage. As he entered, defendant was standing

over Clara with the barbecue fork in his raised hand. Patrick asked defendant what he was doing; defendant did not reply, but lunged at Patrick with the fork. A fight ensued, and defendant stabbed Patrick in the neck and chest. Defendant then ran to his car and drove away.

Elizabeth died from a knife wound that punctured her jugular vein. She also suffered numerous other cuts and bruises. Clara suffered multiple lacerations as well as a fractured jaw and a fractured arm. Frances received several wounds on her face, neck, and hands.

Defendant testified that he returned to the cottage to discuss their marital situation and effect a reconciliation; that he particularly wanted to ask her to accompany him that weekend to inspect some rental units he hoped to move to; that before entering the cottage, he saw an iron bar, picked it up and stuck it in his pants; that he intended only that his wife see the bar, hoping that she would then sit down and talk with him; and that he did not have any intent to use it on Clara or to scare her.[1] Whether the bar was visible is disputed. Clara testified that she did not see it until defendant pulled it out from beneath his shirt.

In his argument to the jury, the prosecutor urged at some length that the first degree felony-murder doctrine was applicable urging that defendant committed a burglary in entering the cottage. He emphasized repeatedly that burglary included an entry with an intent to commit any felony not merely theft, and he repeatedly asserted that defendant entered with intent to assault.

The jury was instructed on first and second degree murder. In connection with the felony-murder rule, the trial judge instructed the jury: "I will now instruct you on the law concerning first degree murder in the perpetration

---

[1]"Q. Did you intend to use the bar on your wife when you walked in the door? A. I didn't have no intention to use the bar on anyone. . . .

"Q. Did you intend that she see the bar? A. Yes, sir, I did. . . .

"Q. What did you intend when you picked up the iron bar, wherever you got it, and put it in your, on your person? A. When I picked, when I seen that bar laying on the concrete wall, I stuck it in my pants there just to figure she would see it and would listen to me. . . .

"Q. In going to the house to talk about the reconciliation, you were going to talk about moving to different places and what was your reason that you assign now for taking the iron bar into the cottage with you? A. I figured when she seen that she'd go around and sit down and listen to what I had to say.

"Q. You figured you were going to use it on her if you didn't like what she said? A. No, sir, I did not.

"Q. You thought you'd scare her a little bit? A. No, sir.

"Q. You thought you'd frighten her a teeny weeny bit? A. No, sir.

"Q. Just put it where you say you put it so she could see it? A. Yes, sir.

"Q. What did you expect her to do when she saw the iron bar? A. I figured she'd go around and sit down and listen to what I had to say."

of burglary. The unlawful killing of a human being, whether intentional, unintentional, or accidental, which is committed in the perpetration or attempt to perpetrate burglary, the commission of which crime itself must be proved beyond a reasonable doubt, is murder of the first degree.

"Every person who enters any structure such as is shown by the evidence in this case, with intent to commit theft or any felony is guilty of burglary. The essence of a burglary is entering a place such as I have mentioned with such specific intent; and the crime is complete as soon as the entry is made, regardless of whether the intent thereafter is carried out."

After instruction on the defense of intoxication and the crime of manslaughter, the jury was instructed on attempted murder and assault with a deadly weapon. The instruction on assault with a deadly weapon did not identify that offense as a felony or otherwise tie the instruction to the felony-murder instruction. The instruction on the offense of assault with a deadly weapon was placed in the context of an instruction on a lesser included offense.

Subsequently, the jury returned to the courtroom and asked the judge the following question. "Does assault on wife constitute a felony regardless of intent upon entering and if so, does felony murder doctrine dictating first degree murder apply?" The court reread the felony-murder instruction, and the instruction on burglary. It did not instruct on assault with a deadly weapon or assault. The court also stated: "In answer to the specific inquiry, the court would advise that the specific intent to commit the assault must exist at the time of entry, otherwise the felony-murder rule does not apply. Does that answer your question?" Whereupon the foreman of the jury stated that he believed it did.

The jurors continued their deliberations for six hours after the above instruction before retiring for the night. The jury returned its verdict the following morning, apparently one and a half hours after resuming deliberations.

In *People* v. *Ireland,* 70 Cal.2d 522, 524 [75 Cal.Rptr. 188, 450 P.2d 580], we considered the applicability of the second degree felony-murder rule to a situation where the claimed felony in the course of which the homicide occurred was an assault with a deadly weapon. We explained the felony-murder doctrine as follows: "The felony-murder rule operates (1) to posit the existence of malice aforethought in homicides which are the direct causal result of the perpetration or attempted perpetration of *all* felonies inherently dangerous to human life, and (2) to posit the existence of malice aforethought *and* to classify the offense as murder of the first

degree in homicides which are the direct causal result of those six felonies specifically enumerated in section 189 of the Penal Code. [Citations.]" (70 Cal.2d at p. 538.)

We further stated: "We have concluded that the utilization of the felony-murder rule in circumstances such as those before us extends the operation of that rule 'beyond any rational function that it is designed to serve.' (*People* v. *Washington* (1965) 62 Cal.2d 777, 783 [44 Cal.Rptr. 442, 402 P.2d 130].) To allow such use of the felony-murder rule would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault—a category which includes the great majority of all homicides. This kind of bootstrapping finds support neither in logic nor in law. We therefore hold that a second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included in fact within the offense charged." (Footnote omitted.) (70 Cal.2d at p. 539.)

We also pointed out that other jurisdictions, through a so-called "merger" doctrine, had applied similar limitations on the felony-murder doctrine and that, although it was not clear whether we would adopt the entire doctrine, "we believe that the reasoning underlying that doctrine is basically sound and should be applied to the extent that it is consistent with the laws and policies of this state." (70 Cal.2d at p. 540.)

*Ireland* was followed in our recent decision of *People* v. *Wilson,* 1 Cal.3d 431 [82 Cal.Rptr. 494, 462 P.2d 22], where the jury was instructed on the first degree felony-murder rule on the theory that the homicide was committed in the course of a burglary because the defendant entered the premises with intent to commit a felonious assault. In *Wilson,* the defendant forcibly entered his estranged wife's apartment carrying a shotgun. He shot one man on the stairs of the apartment, shot William Washington in the living room of the apartment, broke into the bathroom, and killed Mrs. Wilson. The defendant was convicted of the second degree murder of Washington and the first degree murder of his wife. We held that there was error in instructing the jury on both the second degree and the first degree felony-murder rules.

In reversing the judgment convicting defendant of first and second degree murder we stated with respect to the first degree felony-murder instruction: "Here the prosecution sought to apply the felony-murder rule on the theory that the homicide occurred in the course of a burglary, but the only basis for finding a felonious entry is the intent to commit an assault with a deadly weapon. When, as here, the entry would be nonfelonious but for the intent

to commit the assault, and the assault is an integral part of the homicide and is included in fact in the offense charged, utilization of the felony-murder rule extends that doctrine 'beyond any rational function that it is designed to serve.' We have heretofore emphasized 'that the felony-murder doctrine expresses a highly artificial concept that deserves no extension beyond its required application.' *(People* v. *Phillips* (1966) *supra,* 64 Cal.2d 574, 582 [51 Cal.Rptr. 225, 414 P.2d 353].)

" 'The purpose of the felony-murder rule is to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit.' *(People* v. *Washington* (1965) 62 Cal.2d 777, 781 [44 Cal. Rptr. 442, 402 P.2d 130].) Where a person enters a building with an intent to assault his victim with a deadly weapon, he is not deterred by the felony-murder rule. That doctrine can serve its purpose only when applied to a felony independent of the homicide. In *Ireland,* we reasoned that a man assaulting another with a deadly weapon could not be deterred by the second degree felony-murder rule, since the assault was an integral part of the homicide. Here, the only distinction is that the assault and homicide occurred inside a dwelling so that the underlying felony is burglary based on an intention to assault with a deadly weapon, rather than simply assault with a deadly weapon.

"We do not suggest that no relevant differences exist between crimes committed inside and outside dwellings. We have often recognized that persons within dwellings are in greater peril from intruders bent on stealing or engaging in other felonious conduct. (See, e.g., *People* v. *Talbot* (1966) *supra,* 64 Cal.2d 691, 703 [51 Cal.Rptr. 417, 414 P.2d 633].) Persons within dwellings are more likely to resist and less likely to be able to avoid the consequences of crimes committed inside their homes. However, this rationale does not justify application of the felony-murder rule to the case at bar. Where the intended felony of the burglar is an assault with a deadly weapon, the likelihood of homicide from the lethal weapon is not significantly increased by the site of the assault. Furthermore, the burglary statute in this state includes within its definition numerous structures other than dwellings as to which there can be no conceivable basis for distinguishing between an assault with a deadly weapon outdoors and a burglary in which the felonious intent is solely to assault with a deadly weapon.[3]

"In *Ireland,* we rejected the bootstrap reasoning involved in taking an element of a homicide and using it as the underlying felony in a second degree felony-murder instruction. We conclude that the same bootstrapping

---

"[3]Included are any 'shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, railroad car, trailer coach . . ., vehicle . . ., aircraft . . ., mine or any underground portion thereof . . . .' (Pen. Code, § 459.)"

is involved in instructing a jury that the intent to assault makes the entry burglary and that the burglary raises the homicide resulting from the assault to first degree murder without proof of malice aforethought and premeditation. To hold otherwise, we would have to declare that because burglary is not technically a lesser offense included within a charge of murder, burglary constitutes an independent felony which can support a felony-murder instruction. However, in *Ireland* itself we did not assert that assault with a deadly weapon was a lesser included offense in murder; we asserted only that it was 'included in fact' in the charge of murder, in that the elements of the assault were necessary elements in the homicide. (70 Cal.2d at p. 539 and fn. 14.) In the same sense, a burglary based on intent to assault with a deadly weapon is included in fact within a charge of murder, and cannot support a felony-murder instruction." (*People* v. *Wilson, supra,* 1 Cal.3d 431, 440-441.)

*People* v. *Talbot, supra,* 64 Cal.2d 691, 703, and *People* v. *Hamilton,* 55 Cal.2d 881, 901 [13 Cal.Rptr. 649, 362 P.2d 473], were overruled insofar as they held that a felony-murder instruction could be predicated upon a burglary based on an entry with intent to assault the victim of the homicide with a deadly weapon.

██ Under *Ireland* and *Wilson,* the instructions of the court on the first degree felony-murder rule and the court's answer to the question asked by the jury must be held erroneous. Those instructions and the answer could reasonably be understood to mean that if defendant entered with intent to assault his wife and stepdaughter he was guilty of burglary and that the first degree felony-murder rule was applicable. To apply the felony-murder rule to such a situation would extend the doctrine "beyond any rational function that it is designed to serve." ██ As pointed out in *Wilson,* that doctrine can serve its purpose only when applied to a felony independent of the homicide, and where a person enters a building with intent to assault his victims with a deadly weapon, he is not deterred by the felony-murder rule.

██ The Attorney General, pointing out that there is evidence from which the jury might have concluded that defendant entered with intent to assault his wife with a deadly weapon but not his stepdaughter, urges that the felony-murder rule is applicable on the theory that the burglary based on the intent to assault the wife was independent of and collateral to the killing of the stepdaughter. It may be noted in this connection that in New York it has been held that, although the felony-murder rule does not apply where a defendant intentionally assaults each of his two victims who die as a result of the assaults, the rule is applicable if the defendant assaulted one person but killed another who came to the first's defense. (*People* v. *Moran*

(1927) 246 N.Y. 100 [158 N.E. 35, 36-37]; *People* v. *Wagner* (1927) 245 N.Y. 143 [156 N.E. 644, 646].)

However, the instructions given to the jury did not posit the applicability of the felony-murder rule upon any such theory. Moreover, we are satisfied that the distinction made by the New York cases is untenable in the light of ordinary principles of culpability. It would be anomalous to place the person who intends to attack one person and in the course of the assault kills another inadvertently or in the heat of battle in a worse position than the person who from the outset intended to attack both persons and killed one or both.

Where a defendant assaults one or more persons killing one, his criminal responsibility for the homicide should not depend upon which of the victims died but should be the greatest crime committed viewing each victim of the attack individually and without regard to which in fact died. This result is reached in application of existing principles of transferred intent, and it is unnecessary to resort to the felony-murder rule. ▪ Thus if a person purposely and of his deliberate and premeditated malice attempts to kill one person but by mistake and inadvertence kills another instead, the law transfers the intent and the homicide so committed is murder of the first degree. (*People* v. *Sutic,* 41 Cal.2d 483, 491-492 [261 P.2d 241]; *People* v. *Suesser,* 142 Cal. 354, 366-367 [75 P. 1093]; *People* v. *Clayton,* 248 Cal.App.2d 345, 349-350 [56 Cal.Rptr. 413]; *People* v. *Leslie,* 224 Cal.App.2d 694, 704 [36 Cal.Rptr. 915].)

▪ The error in instructing on the felony-murder rule must be held prejudicial. Although there is substantial evidence of premeditation and malice aforethought in the record, the evidence is not overwhelming, and there is conflicting evidence. The question asked of the court by the jury during its lengthy deliberations indicates that the felony-murder instruction played a decisive role in the jury's verdict.

▪ Defendant complains of the court's failure to give the following instruction: "In determining whether in regard to premeditation and deliberation reasonable doubt exists, as that term has been previously defined, you may consider any of the following evidence:

"1. The lack of motive;

"2. The defendant's prior relationship with the child;

"3. The defendant's prior consumption of alcoholic beverage;

"4. The presence of the defendant at King's Tavern immediately prior to his going to the scene;

"5. The defendant's parking of his vehicle in sight on Merriman Avenue prior to entry of the cottage;

"6. Any other evidence tending to prove reasonable doubt."

Section 1096a of the Penal Code declares that when the statutory definition of reasonable doubt is given (see Pen. Code, § 1096), no other instruction need be given defining reasonable doubt. Despite this section, a defendant, upon proper request therefor, has a right to an instruction that directs attention to evidence from a consideration of which a reasonable doubt of his guilt could be engendered. (*People* v. *Granados,* 49 Cal.2d 490, 496 [319 P.2d 346].) ■ This right is not limited to felony-murder cases, such as *Granados* and *People* v. *Whitehorn,* 60 Cal.2d 256, 264 [32 Cal.Rptr. 199, 383 P.2d 783], where the defendant is demanding an instruction that the underlying felony must be proved beyond a reasonable doubt. A defendant is entitled to an instruction relating particular facts to any legal issue. (*People* v. *Kane,* 27 Cal.2d 693, 699-702 [166 P.2d 285]; *People* v. *Cook,* 148 Cal. 334, 346-347 [83 P. 43]; *People* v. *Eckert,* 19 Cal. 603, 605; *People* v. *Mayo,* 194 Cal.App.2d 527, 536-537 [15 Cal. Rptr. 366]; *People* v. *Plywood Mfrs. of Cal.,* 137 Cal.App.2d Supp. 859, 872-875 [291 P.2d 587]; *People* v. *Cohn,* 94 Cal.App.2d 630, 638 [211 P.2d 375]; *People* v. *Wilson,* 100 Cal.App. 428, 431-432 [280 P. 169].)

■ Ordinarily, the relevance and materiality of circumstantial evidence is apparent to the trier of fact, but this is not always true, and the courts of this state have often approved instructions pointing out the relevance of certain kinds of evidence to a specific issue. (E.g., *People* v. *Moore,* 43 Cal.2d 517, 528 [275 P.2d 485].) Instructions generally pointing out the relationship of motive and lack of motive to guilt and innocence have long been approved in this state. (*People* v. *Garcia,* 2 Cal.2d 673, 683 [42 P.2d 1013]; see CALJIC No. 35.) Lack of motive is not only relevant on the issue of identification but also to the issue of premeditation and deliberation, and no reason appears why a defendant upon request should not be entitled to a specific instruction pointing out that lack of motive is a circumstance which may be considered by the jury in determining the issue of premeditation and deliberation. Similarly, lack of furtiveness and the relationship between the defendant and his victims are circumstances which may be considered in determining the issue of premeditation and deliberation. Although the instruction offered in the instant case by the defendant was defective in form in some respects, the court upon retrial should give appropriate instructions, if they are requested, relating the evidence as to motive, furtiveness, and the relationship of defendant and his victims to the issue of premeditation and deliberation in the light of the rule requiring proof beyond a reasonable doubt.

Other claims of error are either unlikely to occur upon retrial or are not presented upon a proper record.

The judgment is reversed.

Traynor, C. J., and Tobriner, J., concurred.

**McCOMB, J.**—I dissent. I would affirm the judgment.

**SULLIVAN, J.**—I concur in the judgment. I agree generally, on the basis of our decisions in *People* v. *Ireland* (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580] and *People* v. *Wilson* (1969) 1 Cal.3d 431 [82 Cal. Rptr. 494, 462 P.2d 22], that the court's instructions on the first degree felony-murder rule in this case were erroneous and that such error was prejudicial. However, I do not agree with, and do not join in, the additional views of the majority relating to the felony-murder rule. I am in accord with the majority's disposition of other claims of error.

Burke, J., and Sims, J.,* concurred.

Respondent's petition for a rehearing was denied April 9, 1970. Sims, J.,* sat in place of Mosk, J., who deemed himself disqualified.

---

*Assigned by the Chairman of the Judicial Council.