[No. C009373. Third Dist. Apr. 2, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD MILTON WHARTON III, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III of the Discussion.

**COUNSEL**

Peter Brixie, E. Katherine Dashiell and Mark E. Cutler, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Edmund D. McMurray, Jane L. Lamborn and Leslie B. Fleming, Deputy Attorneys General for Plaintiff and Respondent.

**OPINION**

**MARLER, J.**—Defendant was charged with carrying a dirk or dagger concealed upon his person (Pen. Code, § 12020, subd. (a); hereafter all undesignated sections references are to the Penal Code) and it was alleged he served a prior prison term within the meaning of section 667.5, subdivision (b). A jury convicted defendant of the section 12020 offense, and the trial court found true the prior prison term allegation. Defendant was placed on three years' probation and ordered to serve sixty days in the county jail as a condition of probation.

On appeal, defendant contends there is insufficient evidence to support his conviction and that the court erred in instructing the jury. He also contends

he is entitled to two days of conduct credit. Defendant's latter contention has merit. We shall modify the judgment accordingly but affirm in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 16, 1988, Butte County Deputy Sheriff Rubinhoff was dispatched to a particular alleyway in Oroville to investigate a landlord-tenant dispute. As he drove into the alleyway, he saw a car that was traveling toward him stop suddenly. The vehicle then "peeled" backward at a "high rate of speed." Deputy Rubinhoff pursued the car, which was driven by defendant.

After defendant stopped his car and got out, Deputy Rubinhoff asked him for identification. As defendant was getting his wallet, the deputy noticed the tip of a silver-colored object in defendant's left rear pants pocket. Because he thought the object could be a knife, Deputy Rubinhoff conducted a patdown search which disclosed that defendant had a knife with a double-edged blade in his pocket. According to Deputy Rubinhoff, defendant stated, "That is my dagger knife," and defendant's companion Neva Kennedy stated defendant carried the knife for protection.

## DISCUSSION

### I

Section 12020, subdivision (a) provides in pertinent part: "Any person in this state . . . who carries concealed upon his or her person any dirk or dagger, is guilty of a felony, . . ."

Defendant contends there is insufficient evidence of concealment because the tip of the knife was protruding from his pocket. We disagree. Only substantial concealment is required. (*People* v. *Fuentes* (1976) 64 Cal.App.3d 953, 955 [134 Cal.Rptr. 885] [dirk with handle protruding from waistband found to be a concealed weapon].) "A defendant need not be totally successful in concealing a dirk to be guilty of violation of Penal Code section 12020, subdivision (a)." (*People* v. *Fuentes, supra*, 64 Cal.App.3d at p. 955.)

Here, the jury was permitted to examine the knife, which our perusal discloses is approximately seven and three-eighths inches long. The jury was apprised that only one and one-half to two inches of the blade were protruding from defendant's pocket. These facts support a finding of substantial concealment.

Defendant also contends there is insufficient evidence to support his conviction because the knife in the present case is not a dirk or dagger as a matter of law. The knife has a rigid, sharp-pointed blade, which is approximately three and one-half inches long and sharpened on both sides. The blade is attached to a handle that does not have a handguard to prevent the hand of the user from slipping onto the blade if the weapon is used for stabbing. Relying primarily on *In re Conrad V.* (1986) 176 Cal.App.3d 775 [222 Cal.Rptr. 552], defendant contends the absence of a handguard precludes a finding that the knife is a dirk or dagger.

In *In re Conrad V., supra,* the court found that a weapon that was similar to a push dagger (see Peterson, American Knives: The First History and Collectors' Guide (1958) p. 64) was not a dirk or dagger as a matter of law because it did not have a handguard and because its blade was only one and one-half inches long and sharpened on one side. (176 Cal.App.3d at p. 778; but see *People* v. *Pettway* (1991) 233 Cal.App.3d 1067 [285 Cal.Rptr. 147].) In support of its holding that dirks or daggers must have handguards, the court in *In re Conrad V.* relied on two Supreme Court opinions, *People* v. *Bain* (1971) 5 Cal.3d 839 [97 Cal.Rptr. 684, 489 P.2d 564] and *People* v. *Forrest* (1967) 67 Cal.2d 478 [62 Cal.Rptr. 766, 432 P.2d 374]. In those cases, however, the Supreme Court was concerned with whether a folding knife could be a dagger and did not address directly whether dirks and daggers must have handguards.

In *People* v. *Forrest, supra,* 67 Cal.2d 478, the court found that the folding knife in question was not a dirk or dagger as a matter of law. (*Id.* at p. 481.) The court noted the fact that the knife was large with a beveled blade and its handle contained handguards was not determinative where the absence of a lock on the blade so greatly limited its effectiveness as a stabbing instrument. (*Ibid.*) The absence of a lock presented a grave danger that the blade would close upon the hand of the wielder. (*Ibid.*) The court stated that "when a knife which . . . has many possible uses, some of which are clearly innocent and utilitarian, also has a characteristic which in many situations will substantially limit the effectiveness of its use as a stabbing instrument, it cannot be held to be a weapon primarily designed for stabbing, and thus is not a dagger or dirk." (*Ibid.*)

In *People* v. *Bain, supra,* 5 Cal.3d 839, the Supreme Court concluded that it was a question of fact for the jury to determine whether a folding knife with a blade that locks in place and a handle with a handguard was a dirk or dagger. (*Id.* at pp. 851-852.) Although both *Forrest* and *Bain* mention that the knives in question had handguards, neither case held that the presence of handguards was a prerequisite to finding that a knife is a dirk or dagger, but

rather that the existence of a handguard is evidence that the knife was designed for stabbing.

No clear guidance concerning the necessity of handguards has been forthcoming from the Legislature which has never defined the terms "dirk" or "dagger." The legislative history of section 12020 is of little assistance. Section 12020, subdivision (a), which makes it a crime to carry any dirk or dagger concealed upon the person was originally enacted in 1953. (See Stats. 1953, ch. 36, p. 653.) The provisions of this section stem from an early statute which made the mere carrying or possession of a dirk or dagger a misdemeanor, unless the person had been convicted previously of any felony or of carrying a deadly weapon, in which case the person was guilty of a felony. (Stats. 1917, ch. 145, § 2, p. 221.)[1] The Legislature simultaneously provided: "Any person who attempts to use or who with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, . . . or any other dangerous or deadly weapon, is guilty of a felony. . . ." (Stats. 1917, ch. 145, § 5, p. 222.) A comparison of these two statutory enactments indicates that not all dangerous knives are considered to be dirks or daggers.[2]

While it is clear that not all knives are dirks or daggers (*People* v. *Bain*, *supra*, 5 Cal.3d at p. 850; *People* v. *Forrest*, *supra*, 67 Cal.2d at p. 481) much confusion has been engendered by the Legislature's failure to define its terms.[3] ▪ "A dagger has been defined as any straight knife to be worn on the person which is capable of inflicting death except what is commonly known as a single 'pocket-knife.' Dirk and dagger are used synonymously and consist of any straight stabbing weapon, as a dirk, stiletto, etc. (Century Dict.) They may consist of any weapon fitted primarily for stabbing. The word dagger is a generic term covering dirk, stiletto, poniard, etc. (Standard Dict.)" (*People* v. *Ruiz* (1928) 88 Cal.App. 502, 504 [263 P. 836]; accord *People* v. *Forrest*, *supra*, 67 Cal.2d at p. 480.)

---

[1] The element of concealment was added in 1923. (Stats. 1923, ch. 339, § 1, p. 696.)

[2] Other sections of the Penal Code also indicate that not all knives or sharp instruments that could be used for stabbing are dirks or daggers. (§§ 626.10, 4502.)

[3] For example in *Bills* v. *Superior Court* (1978) 86 Cal.App.3d 855 [150 Cal.Rptr. 582], the court held that an unaltered tool or instrument other than a knife designed not as a weapon but only as a cutting tool, which is not fitted or designed primarily for stabbing is not a dirk or dagger as a matter of law. (*Id.* at pp. 860-861; see also *People* v. *LaGrande* (1979) 98 Cal.App.3d 871, 873 [159 Cal.Rptr. 709].) Other cases, however, have found items such as ice picks and pointed pieces of metal to be dirks or daggers where the possessors of these items intended to use them as weapons or where the items could be used for one purpose only—to stab. (*In re Robert L.* (1980) 112 Cal.App.3d 401, 404 [169 Cal.Rptr. 354]; *People* v. *Cabral* (1975) 51 Cal.App.3d 707, 711-712 [124 Cal.Rptr. 418].) We need not resolve this conflict concerning whether nonknives may be dirks or daggers as the present case involves a knife. It is hoped the Legislature will examine these problem areas and produce a clear definition of a dagger and dirk.

"In pure usage the dagger, always a weapon, should have a symmetrical tapering blade with two, three, or even four edges and a sharp point. It is primarily designed for thrusting or stabbing. The knife, sometimes a weapon, sometimes a tool, should have a single edge for each blade, though the back can be sharpened for a short distance near the point. It is designed primarily for cutting but can also be used for thrusting. The dirk is a variant of the knife. In its original form it was a weapon with an evenly tapered blade sharpened on one edge. In the late 18th and early 19th centuries, however, the name was applied to all the short side arms carried by naval officers. Thus, it included true daggers and sharply curved knives almost of cutlass length." (Peterson, American Knives, *op. cit. supra*, p. 2.)

■ The question in the instant case is whether a knife must have a handguard as a prerequisite to classification as a dirk or dagger. The guard, if a knife has one, is located between the blade and the hilt or handle. (Peterson, American Knives, *op. cit. supra*, pp. 1, 5.) "If the guard consist of a crossbar, the two arms are called the quillons; and if there is a branch joining the guard and pommel to offer full protection for the hand, it is known as a knuckle-bow." (*Id.* at p. 5.) One of the functions of the quillons is to prevent the hand from slipping forward over the blade during a thrust. (*Id.* at p. 10.) According to Peterson, almost all daggers and fighting knives (a term which includes dirks) have guards to protect the hand. (*Id.* at p. 5; Peterson, Daggers and Fighting Knives of the Western World: From the Stone Age Till 1900 (1968) p. 59.)

But "almost all" is not the equivalent of "all." Both of Peterson's books contain pictures and descriptions of some eared and kidney daggers and Scottish and Mediterranean dirks that do not have handguards that would prevent the hand from slipping onto the blade of the knife. (American Knives, *op. cit. supra*, at pp. 7-9, 20, 65; Daggers and Fighting Knives of the Western World, *op. cit. supra*, at pp. 27, 30-31, 63, plate 20 foll. p. 2, and plate 35 foll. p. 18, plates 69-73 foll. p. 34.) Furthermore, an edition of the Encyclopaedia Britannica published a few years before the first statutory prohibition against dirks appeared in California, describes one type of dirk as a dagger "which has no guard" carried by the Highlanders of Scotland. (VIII Encyclopedia Britannica (11th ed. 1910) p. 310.)

Under the circumstances, we conclude that although a handguard may make a sharp knife a more efficient stabbing weapon and may be evidence of its design for stabbing, the absence of a handguard does not mandate a finding that a knife is not a dirk or dagger as a matter of law. Instead, whether this particular sharp knife with a double-edged blade was a weapon designed primarily for stabbing was a question of fact for the jury. (*People* v. *Bain, supra*, 5 Cal.3d at p. 851.)

## II

The defendant's contention the court erred in refusing his request that the jury be instructed that a dirk or dagger must have a handguard to prevent the hand of the user from slipping onto the blade if the weapon is used for stabbing is clearly without merit in view of part I of this opinion. Not all dirks and daggers have handguards. Hence, the court did not err in refusing to so instruct the jury.

■ Defendant also contends the court should have modified the requested instruction on its own motion to reflect that the absence of a handguard was an important factor to be considered in determining whether or not the knife was a dirk or dagger. Defendant relies on *People v. Sears* (1970) 2 Cal.3d 180 at page 190 [84 Cal.Rptr. 711, 465 P.2d 847] for the proposition that the trial court had a duty to modify the defective instruction. Defendant's reliance on *Sears, supra,* is misplaced as in that case the court was concerned with the trial court's duty, *upon a proper request by the defendant,* to give an instruction that directs the jury's attention to evidence from a consideration of which a reasonable doubt of the defendant's guilt could be engendered. (*Ibid.*)

A trial court is required to instruct sua sponte only on general principles of law which are necessary for the jury's understanding of the case; it need not instruct, absent a request, on specific points of evidence or special theories which might be applicable to the particular case. (*People v. Flannel* (1979) 25 Cal.3d 668, 680-681 [160 Cal.Rptr. 84, 603 P.2d 1]; *People v. Wade* (1959) 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116]; *People v. Atkins* (1975) 53 Cal.App.3d 348, 360 [125 Cal.Rptr. 855].) The trial court has no duty to modify a proposed instruction which is incorrect or defective in form. (5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Trial, § 2954, p. 3628.)

## III*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### Disposition

The judgment is modified to give defendant credit for two days of conduct credit. The trial court is directed to amend the order granting probation

*See footnote, *ante,* page 72.

accordingly and to forward a corrected copy thereof to the Department of Corrections. As modified, the judgment is affirmed.

Blease, Acting P. J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 17, 1992.