Filed 10/16/14  P. v. Smith CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>STEPHEN SEBASTIAN SMITH,<br><br>    Defendant and Appellant. | H039617<br>(Monterey County<br>Super. Ct. No. SS121632) |

Defendant Stephen Sebastian Smith appeals from a judgment of conviction entered after a court trial in which he was convicted of possession of a concealed dirk or dagger (Pen. Code, § 21310 – count 1)[1] and resisting a peace officer (§ 148, subd. (a)(1) – count 2).  Defendant also admitted that he had a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12).  The trial court sentenced defendant to 16 months in state prison on count 1, which was to be served concurrently with a 16-month sentence on count 2.  Defendant's sentence was doubled to 32 months pursuant to section 1170.12.  On appeal, defendant contends that there was insufficient evidence to support his convictions.  He also contends that section 21310, as applied under the facts of this case, violates the Second and Fourteenth Amendments to the United States Constitution.  We conclude that

---

[1]     All further statutory references are to the Penal Code.

there was insufficient evidence to support defendant's conviction of resisting a peace officer and reverse the judgment.

## I.  Statement of Facts
### A.  Prosecution Case

On August 23, 2012, a man who identified himself as Jorge called 911 and stated that he lived at the Northridge Park Apartments.  He reported that he had seen "a guy like . . . yelling and everything and screaming, and he was like . . . [¶] calling out" at the apartment complex "two, three minutes ago."  The man had been "just staring" at Jorge and he had a big knife, which Jorge described as "like a Rambo-type thing."  The man carried the knife "like kind of, telling me, 'Oh, I got a knife, so don't mess with me.'  But without saying any of that."  Jorge did not want the man to think that he had called the police.  Jorge described the man as "a mix, like Hispanic or black, like somewhere in there" and he was wearing pants that were "like one-piece.  But it goes all the way up."  Jorge also stated that the man was wearing a faded black sweater and blue jeans.  The man was "kind of bald" and had "cornrows" or "dreadlocks on the back."  The man was "calling a name out," and Jorge was concerned about children in the area.  The operator told Jorge that two officers were already en route to the apartment complex.

Officer Gavin McVeigh, who was wearing his uniform, was dispatched to the Northridge Park Apartments at about 5:50 p.m.  As he drove into the apartment complex, he observed defendant, who was wearing a black sweatshirt and blue jeans, walking in a westbound direction.  Defendant's hair was balding, short in front and "a little past his shoulders" in the back.  Officer McVeigh immediately stopped, exited his patrol vehicle, pointed his gun at defendant, and told him to stop.  The officer drew his gun due to the nature of the call, that is, a "man with a large knife walking around inside the apartment complex."  Defendant appeared nervous, looked around, and ran.  Officer McVeigh was approximately 25 to 30 feet from the defendant when he told him to stop.

2

As defendant began to run, Officer McVeigh saw that he was concealing a "shiny metallic" item in the right sleeve of his sweatshirt. As defendant ran, his left arm was moving in an up and down motion and his right arm was "a little more stiff and it . . . appeared as though he was using his fingertips to push something up his sleeve." The officer saw the item in defendant's right hand for "[j]ust seconds." Defendant ran between two buildings. Officer McVeigh followed him, but he slowed down as he turned the corner. He lost sight of defendant for "several seconds." After the officer turned the corner, he saw defendant entering the office of the apartment complex.

Other officers arrived and Officer McVeigh informed them of the events. As Officer McVeigh approached the office, defendant and his sister Wendy Duran exited it. Defendant then complied with Officer McVeigh's order to stop and he was taken into custody. When he was arrested, defendant had a flashlight and some other small items on his person.

Sergeant George Lauricella conducted a search of the area around the office and found a large knife about 20 to 25 feet from the front door of the office. The knife was the same color as the object that Officer McVeigh had seen defendant hide in his sleeve. The parties stipulated that the knife found by Sergeant Lauricella did not have defendant's fingerprints on it.

## B. Defense Case

Juan Terrones, the maintenance supervisor at the Northridge Park Apartments, often found items of contraband, such as knives, on the grounds of the property. Duran was Terrones's boss.

Duran, the property manager at the Northridge Park Apartments, was working when defendant came to the apartment complex about 20 minutes before he was arrested. When she saw defendant, he did not have a knife.

3

Defendant testified that he ran when he saw the officer because he had marijuana in his pocket.  He denied that he had a knife.  Defendant was wearing a black sweatshirt and blue bib overalls, and he described his hair as long in the back and that he "kind of shaved" his hair in the front.

## C.  Rebuttal

After defendant had waived his *Miranda*[2] rights, he told Officer McVeigh that a man, who was stalking his sister, put a knife on the ground.  Defendant picked it up and threw it in the garbage can.  No knife was found in the garbage can.

## II. Discussion

## A.  Sufficiency of the Evidence

Defendant contends that there was insufficient evidence to support his convictions.

"The law we apply in assessing a claim of sufficiency of the evidence is well established:  ' " ' " [T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " '  [Citation.]  The standard is the same under the state and federal due process clauses.  [Citation.]  'We presume " 'in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'  [Citation.]  This standard applies whether direct or circumstantial evidence is involved." [Citation.]'  [Citation.]"  (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 294 (*Gonzales*).)

---

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436.

### 1. Carrying a Concealed Dirk or Dagger

Defendant argues that there was insufficient evidence that he was carrying a concealed dirk or dagger. He asserts that the prosecution failed to prove that (1) he possessed a knife, and (2) even if he did, he substantially concealed the knife.

Here, two or three minutes before Jorge called 911, he saw a man carrying a large knife in the Northridge Park Apartments. Two police officers were en route to the apartment complex before the call ended. Jorge described the man as "kind of bald" and with "dreadlocks on the back." Jorge also stated that the man was wearing pants that were "like one-piece," and/or blue jeans and a faded black sweater. When Officer McVeigh arrived at the apartment complex, he saw defendant, who was wearing a black sweatshirt and blue overalls or blue jeans. Defendant's hair was balding, short in front, and "a little past his shoulders" in the back. Thus, there was substantial evidence that defendant was the man whom Jorge saw carrying a knife.

Defendant argues, however, that "[t]he evidence does not show whether the police responded to the apartment complex within five minutes, five hours or five days of the report that a man had a knife." There is no merit to this argument. While Jorge was speaking to the 911 operator, two police officers were en route to the apartment complex.

Defendant also points out that he did not have dreadlocks or cornrows and there is nothing in the record regarding his race. However, we "'"""must review the whole record in the light most favorable to the judgment . . . ."'"'" (*Gonzales*, *supra*, 52 Cal.4th at p. 294.) Here, defendant met the general description of a balding man, who had hair to his shoulders and was wearing a black sweater and blue jeans. Moreover, the trial court observed defendant's appearance in court in making its determination as to whether defendant sufficiently matched the ethnic or racial description provided by Jorge.

Defendant next contends that "only speculation supports the conclusion" that defendant carried the knife. We disagree.

5

As defendant fled, Officer McVeigh saw that he was concealing a "shiny metallic" item in the right sleeve of his sweatshirt. While defendant was running, his left arm was moving in an up and down motion and his right arm was "a little more stiff and it . . . appeared as though he was using his fingertips to push something up his sleeve." Though defendant did not have a knife in his possession when he was arrested, an officer found a silver knife in the bushes along the path of defendant's flight. This knife was the same color as the item that Officer McVeigh saw in defendant's sleeve. Thus, there was substantial evidence that defendant had a concealed knife which he tossed into the bushes as he ran away from the officer.

Defendant also argues that, even assuming he possessed a knife, there was insufficient evidence that he substantially concealed it on his person.

"'A defendant need not be totally successful in concealing a dirk to be guilty of' [citation]'" possession of a concealed dirk or dagger. (*People v. Wharton* (1992) 5 Cal.App.4th 72, 75.) *Wharton* held that there was substantial evidence that the defendant concealed a seven and three-eighths inch knife when one and one-half to two inches of the blade protruded from his pocket. (*Id.* at p. 75.)

Here, Officer McVeigh testified that "it appeared as though [defendant] was concealing an item" in his sleeve and described the item as "shiny metallic." He also testified that "[i]t appeared when he was running, it appeared as though his left arm was running as you would normally run in an up and down motion and his right one was a little more stiff and it was -- appeared as though he was using his fingertips to push something up his sleeve." Defendant focuses on the officer's use of the word "appear" and argues that the officer never testified that he "successfully concealed the knife up his sleeve." "Appear" is defined as "to be or come in sight." (Merriam-Webster's New Collegiate Dict. (10th ed. 1993) p. 56.) Thus, the officer was testifying as to what he had observed, that is, that defendant was concealing a shiny, metallic object, later determined to be a knife, in his sleeve and he described how defendant moved his arms while he was

running with the knife concealed in his right sleeve. Thus, there was substantial evidence that defendant had concealed the knife.

## 2. Resisting a Peace Officer

Defendant contends that there was insufficient evidence to support his conviction of resisting a peace officer.

The elements of resisting arrest are: " '(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the [lawful] performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties. [Citations.]' [Citation.]" (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 759.)

Defendant argues that there was insufficient evidence of the second element, that is, that Officer McVeigh was acting lawfully when he detained him.

"A detention is lawful 'when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' [Citation.]" (*People v. Mayfield* (1997) 14 Cal.4th 668, 791.) Thus, an investigative stop is valid if the officer reasonably suspects that "the person stopped is, or is about to be, engaged in criminal activity." (*United States v. Cortez* (1981) 449 U.S. 411, 417.)

Here, Officer McVeigh was dispatched to the Northridge Park Apartments while the 911 operator was speaking with Jorge. The officer knew that the "nature of the call" involved "[a] man with large knife walking around inside the apartment complex." However, the prosecution presented no evidence that the officer knew of any facts that lead him to reasonably suspect that defendant was the person who had a large knife. Officer McVeigh may well have been informed by dispatch about the perpetrator's hairstyle, clothing, racial or ethnic background, but no such testimony was presented at trial. The officer also did not testify about the threatening behavior of the perpetrator.

7

Thus, there was insufficient evidence that the officer was engaged in the lawful performance of his duties when he ordered defendant at gunpoint to stop.

The Attorney General argues that this court must view the evidence in the light most favorable to the judgment and thus we must assume that Officer McVeigh was aware of the information that Jorge conveyed to the 911 operator. Our standard of review, however, does not allow us to assume facts that are not part of the record.

Relying on *People v. Dolly* (2007) 40 Cal.4th 458 (*Dolly*), the Attorney General contends that since defendant never argued that Officer McVeigh did not have the information provided by Jorge, he has forfeited the issue. *Dolly* is readily distinguishable from the present case. In *Dolly*, the defendant appealed from an order denying his motion to suppress evidence. (*Id.* at p. 461.) The defendant challenged, among other things, the trial court's implied finding that the officer was aware that the 911 caller had been threatened with a gun, because the tape of the radio dispatch did not include the word "threat." (*Id.* at p. 466, fn. 1.) It was in this context that *Dolly* stated "defendant never argued below that the officers lacked knowledge of the contents of the 911 call, thereby denying the People the opportunity to offer contrary evidence . . . . [Citations.]" (*Ibid.*) More importantly, the officer in *Dolly* testified that, prior to the stop, he had received information of the following: a man had threatened a 911 caller with a gun, a detailed physical description of the man, and the man's location. (*Id.* at p. 462.) Here, in contrast to *Dolly*, the issue is whether there was sufficient evidence to support a conviction. Unlike the officer in *Dolly*, there was no evidence that Officer McVeigh was aware of Jorge's physical description of the perpetrator or his threatening behavior.

### B. Right to Bear Arms

For the first time on appeal, defendant contends that his conviction of carrying a concealed dirk or dagger violated the Second Amendment right to bear arms.

"Although a defendant's failure to present an issue to the trial court generally forfeits it on appeal, we exercise our discretion to consider the issue to the extent it presents a pure question of law or involves undisputed facts. [Citations.]" (*People v. Mitchell* (2012) 209 Cal.App.4th 1364, 1370.) *Mitchell* held that the statute prohibiting carrying a concealed dirk or dagger "does not run afoul of the Second Amendment because it is narrowly tailored to serve the important governmental interest of preventing exposure to the risk of surprise attacks . . . ." (*Id.* at p. 1375.)

Defendant argues, however, that "the important governmental interest of protecting others from being surprised by a weapon is not present here," because "[e]veryone involved in this case knew that [he] had a knife or a shiny object that could be a knife . . . ." It is irrelevant whether Officer McVeigh knew that defendant was carrying a concealed knife. As previously discussed, there was substantial evidence that defendant was carrying a concealed knife. Since the governmental interest was present here, there was no Second Amendment violation.

## III.    Disposition

Since there was insufficient evidence to support the conviction for resisting arrest, we reverse the judgment.

 

 

 

 

 
|  |  |  |
| --- | --- | --- |
|  | _____ |  |
|  | Mihara, J. |  |

WE CONCUR:

 

 

_____
Premo, Acting P. J.

 

 

_____
Elia, J.