Filed 8/25/15  In re I.G. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re I.G., a Person Coming Under the Juvenile Court Law. | H040896 (Santa Clara County Super. Ct. No. 3-13-JV40440A) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>I.G.,<br><br>    Defendant and Appellant. | |

After a contested jurisdiction hearing, the juvenile court found true the allegation that I.G. (minor) committed second-degree attempted robbery (Pen. Code, §§ 664, 211, 212.5, subd. (c)) and that during the commission of the offense he personally used a deadly weapon, a machete.  On appeal, minor argues the court erred when it found the offense of attempted robbery qualified as an offense under Welfare and Institutions Code section 707, subdivision (b).[1]  He also claims the probation condition requiring him to comply with school rules and regulations is unconstitutionally vague and requires modification.

We conclude that attempted robbery is not an offense listed under section 707, subdivision (b).  However, we find that the facts and circumstances surrounding minor's

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

offense rendered it within the purview of section 707, subdivision (b). Therefore, the juvenile court's designation of his offense was not in error. We agree with minor's contention regarding his probation condition, so we modify the challenged condition. As modified, the juvenile court's order is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

On December 20, 2013, a juvenile wardship petition (§ 602) was filed alleging that minor attempted to commit second degree robbery (Pen. Code, §§ 664, 211, 212.5, subd. (c)) with a deadly weapon (*id*., §§ 667, 1192.7).[2]

On January 23, 2014, a contested jurisdiction hearing was held. Richard Roxas, the victim, testified. Roxas worked as an automotive technician and was towing a customer's car late one night in December 2013. Approximately four men approached Roxas, demanding money. One of the suspects, later identified to be minor, was carrying a machete. Minor was approximately four feet away from Roxas, and Roxas testified that minor held the machete in his hand and waved it in a threatening manner. Roxas was afraid minor would come at him with the machete and believed minor and his accomplices were trying to rob him. Roxas told the group that he did not have any money and that he did not want any trouble. Afterwards, the group walked away. Roxas called 911. Shortly thereafter, an officer arrived and showed Roxas four men, including minor. Roxas identified them as the ones who had attempted to rob him.

San Jose Police Officer Todd Wellman responded to Roxas' call. As he was driving to the scene, Wellman saw a group of men walking along the street that matched the description he had received over the police dispatch. All four individuals, including minor, were apprehended. Shortly thereafter, the officers found a machete matching the description Roxas had provided.

_____

[2] The petition was amended on January 23, 2014.

2

Minor testified on his own behalf. He said he was walking around with three friends that night. Minor saw Roxas on the street. As minor and his friends passed Roxas, Roxas shined his flashlight on them. Minor and his friends asked Roxas why he was shining a flashlight. Roxas responded by asking minor and his friends what they were doing. At the time, minor had a machete under his sleeve, and approximately six inches of the blade was sticking out. The sharp end of the machete was pointed downward, toward the concrete. Minor denied ever waving the machete at Roxas.

Minor asked Roxas for some change, referring to Roxas as "sir." Minor asked him twice, and Roxas said no. Afterwards, minor asked Roxas if they were "cool." Minor said he also added a "sir" when he asked Roxas if they were "cool" for the second time. Roxas responded affirmatively, and minor walked away with his friends. Minor said that Roxas was on the phone the entire time. Minor explained that he had asked Roxas for change so that he could take the bus back home.

At the end of the jurisdiction hearing, the court found the allegations that minor had committed attempted robbery and that he had personally used a deadly weapon, the machete, true. The juvenile court also found that the offense qualified as an offense under section 707, subdivision (b). Minor's attorney objected, arguing that attempted robbery was not named as an offense under section 707, subdivision (b).

The court held a disposition hearing on February 24, 2014. Again, minor's attorney reiterated his objection to minor's offense being designated a section 707, subdivision (b) offense. The court acknowledged the objection, but noted that a different judge had found the offense to be a section 707, subdivision (b) offense. The court declined to modify the prior judge's finding. Thereafter, minor was adjudged a ward of the court, was ordered to serve 41 days on the electronic monitoring program, and was returned to the custody of his parents. He was also placed on probation, subject to various terms and conditions including that he obey all school rules and regulations.

3

Minor appealed.

DISCUSSION

On appeal, minor challenges the juvenile court's determination that his offense qualified as an offense under section 707, subdivision (b). He also argues the probation condition requiring him to comply with school rules must be modified to include a knowledge element to render it constitutional. We first address his claims regarding section 707, subdivision (b).

1. *Section 707, subdivision (b)*

Minor challenges the court's determination that his attempted robbery allegation was an offense under section 707, subdivision (b), on two alternate grounds: (1) the finding is void, because it was not alleged in the petition that the offense qualified as an offense under section 707, subdivision (b), and (2) the determination was made in error, because attempted robbery is not listed under section 707, subdivision (b).

a. **Statutory Framework**

Section 707, subdivision (a) states that whenever a minor who is 16 years of age or older is alleged to be a person described under section 602, subdivision (a), the juvenile court may make a finding on whether the minor is a fit and proper subject to be dealt with under juvenile court law. Subdivisions (b) and (c) of section 707 specify that if the minor is alleged to be a person described under section 602 when he or she is 14 years of age or older, having committed one of the 30 enumerated offenses under subdivision (b), the minor is presumed to be unfit to be dealt with under juvenile court law.

b. **Mootness**

First, we address the issue of mootness. It is this court's duty to decide actual controversies, not to give opinions on moot questions or abstract principles or declare principles or rules of law that cannot affect the case before us. (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.) Here, the People

4

insist that the issue is moot, because the court's determination that the offense was one enumerated under section 707, subdivision (b) will have no impact on minor in the future and had no impact on minor's case below.

In minor's case, even though the juvenile court determined at the end of the jurisdiction hearing that minor's offense qualified as an offense under section 707, subdivision (b), there was no express finding that minor should not be tried in juvenile court. Additionally, minor *was* tried in juvenile court, not in criminal court, and was placed on probation, not committed to the Division of Juvenile Facilities.

Furthermore, the People claim that the juvenile court's determination that the offense was a section 707, subdivision (b) offense would also have no adverse consequences against minor in the future. Although an offense under section 707, subdivision (b), can qualify as a prior strike (Pen. Code, § 667, subd. (d)(3)(B), (D)), in future prosecutions the People would still need to plead and prove that minor's prior adjudication qualifies under the Three Strikes Law. Additionally, minor is now 18 years of age and will no longer be the subject of a wardship petition under section 602, or receive a juvenile court disposition in the future.

Minor, however, insists that the court's declaration that his offense is one enumerated under section 707, subdivision (b), will have practical consequences. We agree. As minor points out, minors who are found to have committed an offense listed under section 707, subdivision (b), are precluded from sealing their juvenile records pursuant to section 781, subdivision (a). Accordingly, the issue is not moot and we will address the merits of minor's claims.

c. **Due process**

Minor argues that his due process rights were violated when the juvenile court found his offense to be within section 707, subdivision (b), because it was never alleged in the section 602 petition.

To support his contention, minor relies on *People v. Mancebo* (2002) 27 Cal.4th 735 (*Mancebo*). In *Mancebo*, the California Supreme Court held that the trial court erred when it found an additional sentence enhancement under Penal Code section 12202.5, subdivision (a), that was not separately pleaded and proved. (*Mancebo*, *supra*, at p. 743.) *Mancebo* concluded that failing to plead this enhancement provided defendant with inadequate notice, since defendant had no advance knowledge that the People would attempt to secure the additional enhancement. (*Id*. at p. 746.)

Minor also cites to *In re Robert G.* (1982) 31 Cal.3d 437 (*Robert G.*). In *Robert G.*, the Supreme Court reversed the juvenile court's judgment finding that minor committed a battery. (*Id*. at p. 439.) The section 602 petition had charged minor with committing an assault with a deadly weapon, not battery, and it was well-established that battery is not necessarily a lesser included offense of a charge of an assault with a deadly weapon. (*Robert G.*, *supra*, at pp. 439, 442.)

We agree with minor that the juvenile court cannot sustain an allegation against him that is not first alleged in the section 602 petition, because that would be a violation of his due process rights. However, that is not what happened here, and the cases relied on by minor are inapposite. For example, *Mancebo* and *Robert G.* concern additional allegations and enhancements. Here, the section 707, subdivision (b) finding was not an enhancement or an additional allegation.

Furthermore, the court's finding that the sustained allegation was for an offense enumerated under section 707, subdivision (b) was based on the facts and circumstances of minor's offense of attempted robbery with the personal use allegation. The attempted robbery allegation and the personal use allegation were both set forth in the petition. Therefore, even if minor was informed that the People sought to designate the offense as a section 707, subdivision (b) offense, minor would not have prepared his defense differently. Additionally, the court's section 707, subdivision (b) finding was "not based

on allegations in the pleadings but on evidence the court is directed to evaluate pursuant to sections 706 and 725.5." (*In re Gary B*. (1998) 61 Cal.App.4th 844, 853 (*Gary B*.).) Accordingly, we find no violation of minor's due process rights.

    d. **The allegations in the section 602 petition**

Here, the juvenile court designated minor's offense of attempted robbery with the additional allegation he personally used a deadly weapon as an offense under section 707, subdivision (b). Although minor's offense is not specifically named under section 707, subdivision (b), there is support for the "general proposition that a court may, under certain circumstances, look beyond the bare elements of a juvenile adjudication to determine whether it is based on *conduct* qualifying under section 707, subdivision (b)." (*In re James H*. (2007) 154 Cal.App.4th 1078, 1086-1087, italics added.)

For example, in *Gary B*., *supra*, 61 Cal.App.4th at page 850, the appellate court held that "the juvenile court is entitled to base its section 707 determination on facts before it at the dispositional hearing which are either admitted by the minor or which the court finds to be true by a preponderance of the evidence." Therefore, at issue here is whether minor's conduct sufficiently rendered his offense to be one listed within section 707, subdivision (b). "We review the juvenile court's findings under the substantial evidence standard." (*In re Emilio C*. (2004) 116 Cal.App.4th 1058, 1065 (*Emilio C*.).)

*Attempted Robbery*

Minor argues that attempted robbery is not listed as an offense under section 707, subdivision (b), and we agree.

Section 707, subdivision (b), lists 30 offenses that can create the presumption of unfitness. Robbery (§ 707, subd. (b)(3)) is listed, and so is one attempt offense, the attempt to commit murder (*id*., subd. (b)(12)). No other attempt offense, including attempted robbery, is listed under section 707, subdivision (b).

7

The People disagree with minor, contending that attempted robbery is listed under section 707, subdivision (b)(17). Section 707, subdivision (b)(17) lists "[a]n offense described in section 12022.5 or 12022.53 of the Penal Code," and Penal Code section 12022.53 lists "attempted robbery" as an offense. The People acknowledge that Penal Code section 12022.53 describes sentence enhancements for individuals who commit certain felonies while personally using a firearm. However, they claim that section 707, subdivision (b)(17), specified "offenses," not "enhancements," thereby rendering all the listed "offenses" in Penal Code section 12022.53 within the purview of section 707, subdivision (b), regardless of whether a firearm was used.

We disagree with the People's interpretation. "Where a statute is theoretically capable of more than one construction we choose that which most comports with the intent of the Legislature. [Citations.] Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible. [Citations.] Interpretive constructions which render some words surplusage, defy common sense, or lead to mischief or absurdity, are to be avoided." (*California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844.) Therefore, " 'a court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant.' " (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 307.)

The list of offenses described in Penal Code section 12022.53 duplicates some of the offenses listed under section 707, subdivision (b).[3] Accordingly, if we were to read section 707, subdivision (b)(17) to incorporate all the offenses listed in Penal Code

---

[3] For example, Penal Code section 12022.53 lists offenses such as murder, kidnapping, robbery, carjacking, and lewd or lascivious acts. Section 707, subdivision (b), also lists these offenses.

section 12022.53, we would render a portion of the listed offenses under section 707, subdivision (b), extraneous and redundant.

We therefore adopt a more restrictive interpretation and conclude that section 707, subdivision (b)(17)'s incorporation of the offenses described under Penal Code section 12022.53 are limited to those offenses where a minor has personally used a firearm. Since minor did not use a firearm in the commission of the attempted robbery, his offense was not one enumerated under section 707, subdivision (b)(17). This conclusion is in line with other appellate cases that have concluded that attempted robbery is not subject to the presumption set forth under section 707, subdivision (c), because it is not a listed offense under section 707, subdivision (b). (*David P. v. Superior Court* (1982) 127 Cal.App.3d 417, 419 ["the presumption of unfitness contained in subdivision (c) of section 707 does not apply to an allegation of attempted robbery"]; *In re J.L.* (2008) 168 Cal.App.4th 43, 56 ["the underlying attempted robbery is not a section 707, subdivision (b), offense"].)

### *Use of a Deadly Weapon (Machete)*

The court also found minor personally used a deadly weapon, a machete, during the commission of the attempted robbery. Minor argues his use of a deadly weapon does not render his offense one within the purview of section 707, subdivision (b).

First, minor argues his offense is not within section 707, subdivision (b)(18), which specifically includes felony offenses in which the minor personally used a weapon as described in Penal Code section 16590. Penal Code section 16590 lists 26 specific types of weapons, including a "lipstick case knife" (Pen. Code, § 16590, subd. (n)), a shobi-zue (*id*., subd. (s)) and a writing pen knife (*id*., subd. (y)). A machete is not listed by name as a weapon under Penal Code section 16590.

However, Penal Code section 16590, subdivision (i) defines a prohibited weapon as a "*concealed* dirk or dagger, as prohibited by [Penal Code] Section 21310." (Italics

9

added.)  Penal Code section 16470 defines a dirk or dagger as a "knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death."  Therefore, on its face it appears that the defendant's use of a machete *may* qualify as a dirk or dagger.  However, there is insufficient evidence in the record to support the required element that the machete was concealed.

Roxas testified at minor's trial that minor waved the machete at him.  Minor testified in court that he had the unsharpened side of the machete up his sleeve, but asserted that approximately half a foot or six inches of the machete was hanging out of his sleeve.  Although the law does not require complete concealment for a conviction of carrying a concealed dirk or dagger to stand, at a minimum "substantial concealment is required."  (*People v. Wharton* (1992) 5 Cal.App.4th 72, 75 [holding knife was concealed when only approximately one or two inches of blade was protruding from defendant's pocket]; *People v. Fuentes* (1976) 64 Cal.App.3d 953 [finding concealment when portion of dirk's handle was visible as protruding from defendant's waistband].)  Accordingly, there is insufficient evidence that minor's conduct constituted an offense specified under section 707, subdivision (b)(18).

Next, minor argues his conduct cannot be construed to be within section 707, subdivision (b)(14), which lists an assault with force likely to cause great bodily injury.  Assault with force likely to cause great bodily injury has also been construed to include the offense of assault with a deadly weapon in this context.  (*In re Pedro C.* (1989) 215 Cal.App.3d 174, 183.)

Assault is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  (Pen. Code, § 240.)  In contrast, robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by

10

means of force or fear." (*Id*., § 211.)  The requisite element of fear in a robbery offense may either be (1) the fear of unlawful injury to the person or property of the person robbed, or any relative or family member, or (2) fear of immediate and unlawful injury to the person or property of anyone with the person robbed at the time of the offense.  (*Id*., § 212.)  Unlike assault, the threat to inflict injury required under a robbery offense "need not be accompanied by the present ability to carry it out."  (*People v. Wolcott* (1983) 34 Cal.3d 92, 100.)

Assault, however, requires that the perpetrator have a *present ability* to commit a violent injury upon the other victim.  A present ability to commit injury has been the subject of interpretation by various cases.  " 'Holding up a fist in a menacing manner, drawing a sword, or bayonet, presenting a gun at a person who is within its range, have been held to constitute an assault.  So, *any other similar act*, accompanied by such circumstances as denote an intention existing at the time, coupled with a present ability of *using actual violence* against the person of another, will be considered an assault.' " (*People v. Colantuono* (1994) 7 Cal.4th 206, 219.)  " 'There need not be even a direct attempt at violence; but any indirect preparation towards it, under the circumstances mentioned, such as drawing a sword or bayonet, or even laying one's hand upon his sword, would be sufficient.' " (*People v. Chance* (2008) 44 Cal.4th 1164, 1172.)  Courts have held that merely holding a "knife in a threatening manner and demand[ing] money is sufficient to satisfy the requisite intent" for a charge of assault with a deadly weapon, even without an affirmative attempt to commit a battery like a lunge toward the victim. (*People v. Vorbach* (1984) 151 Cal.App.3d 425, 429.)

Here, Roxas testified that minor waved a machete at him, causing him fear of injury.  Minor argues that Roxas' testimony establishes that he was not close to Roxas when he waved the machete.  Roxas testified that he was in the middle of the street, while

11

minor and his friends were several feet away on the sidewalk, approximately four feet away from minor.

However, case law has established that assault with a deadly weapon occurs once a defendant holds a knife in a threatening manner and makes demands or threats. (*People v. Vorbach*, *supra*, 151 Cal.App.3d at p. 429.) Furthermore, a distance of only four feet is not far, especially when taking into consideration the size of the machete. Even if minor's testimony that part of the weapon was up his sleeve was true, minor testified that approximately half a foot of the blade's sharp end was protruding. Based on minor's proximity to Roxas and his use of the machete, sufficient evidence supports the conclusion that minor had the present ability to commit violent injury on Roxas.

Accordingly, sufficient evidence would support both the determination that minor's offense constituted attempted robbery, and also would support the finding that he committed an assault with a deadly weapon during the commission of the offense, which was a section 707, subdivision (b) offense.

Minor, however, argues that a finding that his offense constituted an assault would violate his due process rights, because he was not charged with committing assault in the section 602 petition. In support of his proposition, minor again relies on *Mancebo* and *Robert G.* However, we again find those cases distinguishable.

As we noted earlier, the finding that a minor's offense falls within the purview of section 707, subdivision (b) "is not based on allegations in the pleadings but on evidence the court is directed to evaluate pursuant to sections 706 and 725.5." (*Gary B.*, *supra*, 61 Cal.App.4th at p. 853.)

For example, in *Emilio C.*, the trial court concluded that minor's conduct constituted an offense under section 707, subdivision (b), for a violation of Penal Code section 288, even though the count was dismissed and the juvenile court sustained the minor's petition for a violation of Penal Code section 288.5 (continuous sexual abuse of a

12

child), an offense not listed under section 707, subdivision (b). (*Emilio C.*, *supra*, 116 Cal.App.4th at pp. 1065-1066.) The *Emilio C.* court concluded that the juvenile court was "entitled to look beyond the pleadings and consider the circumstances of [minor's] offense." (*Id.* at p. 1065.) Additionally, *Emilio C.* reiterated that the juvenile court was also able to base its decision on "facts presented at the disposition hearing that the court found to be true by a preponderance of the evidence." (*Ibid.*) In *Emilio C.*, the appellate court concluded that sufficient evidence showed that minor's conduct constituted a violation of Penal Code section 288, subdivision (b) (lewd and lascivious acts on a child under the age of 14 by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person), which is specifically enumerated in section 707, subdivision (b). Additionally, the court concluded the evidence also established that minor's assaults constituted rape with force or violence or threat of great bodily harm, an offense also enumerated under section 707, subdivision (b). (*Emilio C.*, *supra*, at p. 1066.)

Similarly, the appellate court in *Gary B.* held that the juvenile court appropriately considered minor's personal use of a firearm during the commission of the charged robbery, even though the firearm enhancement was dismissed pursuant to a plea bargain. (*Gary B.*, *supra*, 61 Cal.App.4th at p. 851.)

Here, when making the determination on whether minor's offense constituted an offense within the meaning of section 707, subdivision (b), the trial court was entitled to contemplate facts "transactionally related to the offenses upon which the petition is sustained." (*Gary B.*, *supra*, 61 Cal.App.4th at p. 851.) Minor's use of the machete when demanding Roxas' money was transactionally related to the attempted robbery offense. Since this evidence supports the trial court's determination, we find no due process violation.

13

2. *Probation Condition*

Lastly, minor challenges probation condition No. 6 imposed by the juvenile court that stated that he should "attend school regularly with no unexcused absences or tardies, and obey all rules and regulations of school officials." He claims the part of the condition requiring him to comply with school rules and regulations is unconstitutionally vague.

"A Court of Appeal may review the constitutionality of a probation condition, even when it has not been challenged in the trial court, if the question can be resolved as a matter of law without reference to the sentencing record. (*In re Sheena K.* (2007) 40 Cal.4th 875, 888-889 (*Sheena K.*).) Our review of such a question is de novo." (*People v. Pirali* (2013) 217 Cal.App.4th 1341, 1345.)

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' " (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.) "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness." (*Ibid.*) That is, the defendant must know in advance when he may be in violation of the condition. "[T]he law has no legitimate interest in punishing an innocent citizen who has no knowledge" that he or she may be violating a probation condition. (*People v. Freitas* (2009) 179 Cal.App.4th 747, 752.)

The People oppose modification, arguing that the condition is already sufficiently constitutionally clear. They argue that the addition of a knowledge requirement is not necessary, because probation violations must be willful. (*People v. Zaring* (1992) 8 Cal.App.4th 362, 378-379.) Therefore, they argue that minor will not be found in violation of his probation unless the evidence shows he willfully broke school rules or regulations.

14

We agree with the People that even without modification, there is a requirement that minor must be found to have *willfully* violated school rules or regulations before he can be found in violation of his probation. However, this does not cure the condition's vagueness problem. By itself, the condition does not sufficiently inform minor of what he is required to do. School rules and regulations can range widely from rules set forth by an individual school to the rules set forth by the school district. They can also include internal classroom rules that are set by teachers or other rules and regulations that are posted on school grounds. To add to the confusion, rules and regulations can be set orally by school administrators, or written in school handbooks. Based on the present wording of the probation condition, it is not clear what conduct is proscribed, because it is not sufficiently clear what types of rules or regulations are at issue. Accordingly, out of an abundance of caution, we modify the probation condition to clarify that minor is required to obey school rules and regulations that are known to minor or that are set forth by his probation officer, school staff, or in the institution's handbook.

**DISPOSITION**

Probation condition No. 6 is modified to read that "said minor attend school regularly with no unexcused absences or tardies, and obey all known rules and regulations of school officials and those rules and regulations of school officials as set forth by the probation officer, school staff, or in the institution's handbook." As modified, the juvenile court's order is affirmed.

15

_____
Walsh, J.[*]

WE CONCUR:


_____
Rushing, P. J.



_____
Elia, J.


_____
[*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.